RICHARD TURNER, Plaintiff-Appellee, v. COSMOPOLITAN NATIONAL BANK, Trustee, Defendant (Sam Lane *et al.*, Defendants-Appellants).

First District (2nd Division)   No. 1—87—2958

Opinion filed March 14, 1989.

Law Offices of Sherwin Greenberg, of Chicago (Sherwin Greenberg, of counsel), for appellants.

McNeela & Griffin, Ltd., of Chicago (James R. Dashiell, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

A jury returned a verdict for the plaintiff in this personal injury action wherein he charged defendants with negligence in the maintenance of the door of the vestibule at the entrance of a building owned by them.

Defendants raise the following issues on appeal: (1) whether the court erred in vacating its order of summary judgment based upon its determination that the action was time barred; (2) whether the court erred in voiding a release executed by plaintiff in favor of defendants; and (3) whether the court erred in not directing a verdict in favor of defendants and against plaintiff. We affirm.

On November 10, 1974, plaintiff slipped and fell in the vestibule of a multi-unit apartment building owned by defendants. The outer door of the vestibule could not be kept shut and would repeatedly blow open; as a result, water, ice and snow accumulated on the vestibule floor. Plaintiff slipped and fell on this accumulation, thereby fracturing his left fibula just above the ankle.

On November 10, 1976, plaintiff filed this action against Cosmopolitan National Bank as trustee. On December 21, 1976, pursuant to its motion, the bank was dismissed, and plaintiff, after being granted leave, amended his complaint to add Sam and Evelyn Lane as defendants. On March 25, 1982, plaintiff voluntarily dismissed his action and refiled it on May 21, 1982. Defendants filed their answer on October 21, 1982, without asserting therein the statute of limitations as an affirmative defense.

Thereafter, numerous pleadings and motions were filed, voluminous discovery was had, and the case was placed on the trial call for November 13, 1984. Defendants did not raise the issue of the statute of limitations until March 31, 1986, when they filed a motion for summary judgment. By that time the matter had been called for trial nine different times, but had been continued each time at the request of defense counsel. On April 10, 1986, after hearing the arguments of counsel and reviewing the documents filed in support of their respective positions, Judge Berman denied defendants' motion. Just as the case was to proceed to trial before Judge Bieschke, on January 15, 1987, defendants filed another motion for summary judgment, and the

judge granted it on that same day.

Thereafter, counsel for the parties entered into settlement negotiations, pursuant to which defendants made a settlement offer of $3,500. On January 28, 1987, plaintiff's counsel discussed the offer with his client in a phone conversation, during which plaintiff was advised that outstanding costs and expenses in the approximate amount of $1,800 had been advanced on his behalf in the case and that this sum would have to be reimbursed out of the settlement, but that counsel would waive his fee. As a result of this conversation, it was plaintiff's counsel's understanding that he should attempt to negotiate the best possible settlement for his client, but that in any event he had authority to settle the case for $3,500.

Accordingly, plaintiff's counsel resumed settlement negotiations with the attorney for the defendants, Larry Wikoff. Ultimately, plaintiff's attorney advised Mr. Wikoff that his client agreed to a settlement of $3,500. On February 10, 1987, plaintiff's counsel confirmed this in a letter to his client, enclosing a release to be signed by him. On February 13, 1987, when plaintiff's attorney had not yet received the release signed by his client, he filed a motion to reconsider the court's awarding summary judgment and scheduled it for a hearing on February 23, 1987. On February 16, 1987, plaintiff's attorney sent a letter to his client informing him that he had filed the motion to reconsider. On that same day, plaintiff's counsel received a telephone call from Reverend Smith, a friend of plaintiff, of whom plaintiff had previously informed the attorney. Reverend Smith desired information in behalf of plaintiff concerning the settlement and the background of the case, which plaintiff's counsel supplied. Reverend Smith indicated to the attorney that plaintiff expected to receive a larger portion of the settlement, but that he would relay the information to plaintiff. On February 17, 1987, plaintiff's counsel received an executed release signed by plaintiff and witnessed by Lavonne Essex. Plaintiff's attorney dated the release based upon the accompanying postmark of February 16, 1987, and on February 19, 1987, he delivered the executed release to Mr. Wikoff. Later that same day, plaintiff's attorney received a telephone call from his client, who said that he had thought he would be receiving a net amount of $2,500 if the case was settled for $3,500. Plaintiff's attorney promptly advised Mr. Wikoff of problems with the release, and they agreed to reset the hearing on the motion for reconsideration for March 9, 1987.

At the hearing on plaintiff's motion to reconsider on March 9, 1987, defendants brought the signed release to the court's attention. Judge Bieschke heard testimony from plaintiff, and pursuant to leave

of court, both attorneys filed affidavits relating to the circumstances surrounding the execution and delivery of the release.

After Judge Bieschke held a hearing on March 30, 1987, regarding the issues presented by the release and by plaintiff's motion for reconsideration, he held that fundamental equities required that the release be set aside and predicated the ruling on his opportunity to hear and observe the plaintiff first hand and on plaintiff's inability to comprehend adequately the nature of the matter before the court.

The court then dictated an opinion from the bench granting plaintiff's motion for reconsideration and instructed counsel to agree upon a trial date. Trial began on June 1, 1987, and resulted in a jury verdict and judgment in favor of the plaintiff in the sum of $25,000. Defendant's post-trial motion was filed on July 6, 1987, and denied on August 13, 1987. This appeal followed.

I

Defendants argue that plaintiff failed to file his action within the two-year period from the date the cause of action accrued (Ill. Rev. Stat. 1981, ch. 110, par. 13—202), asserting that plaintiff incurred his injury on November 10, 1974; that the original action was filed on November 10, 1976; that service of summons was had on defendant Cosmopolitan National Bank on November 15, 1976; that Cosmopolitan was dismissed on December 21, 1976; that plaintiff was given leave that same day to amend by adding Sam and Evelyn Lane; and that on March 25, 1982, plaintiff filed his amended complaint adding the Lanes.

Defendants acknowledge, and the record is clear, that they did not raise the issue of the bar of the statute of limitations by pleading it as an affirmative defense in their answer, but claim instead that they correctly raised the issue by way of a motion for summary judgment, contending that it is permissible to raise an affirmative defense for the first time in such a motion. (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223.) Defendants further maintain that plaintiff's amended complaint filed on March 25, 1982, did not relate back to the date of the filing of the original suit on November 10, 1976.

Section 2—616(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—616(d)) sets forth five requirements that a plaintiff must meet in order for a successor complaint to relate back to the original filing of his or her action: (1) the time prescribed or limited had not expired when the original action was commenced; (2) failure to join the person as a defendant was inadvertent; (3) service of sum-

mons was in fact had upon the person; (4) the person knew, within the time that the action may have been brought, that the original action was pending and that it grew out of a transaction involving him or her; and (5) it appears from the original and amended pleading that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading. *Hoving v. Davies* (1987), 159 Ill. App. 3d 106, 512 N.E.2d 729.

Defendants charge that the plaintiff does not meet the requirement of section 2—616(d)(4), contending that in order to comply with it, service upon Cosmopolitan National Bank as trustee must have been had within the limitations period. (*Foster v. Leong* (1985), 139 Ill. App. 3d 492, 487 N.E.2d 995.) The court in *Foster* held that, in effect, section 2—616(d)(4) poses an additional requirement in that suit must not only be filed within the limitations period, but service must be had upon the trustee within that time frame. Defendants argue that since the trustee was not served until November 15, 1976, five days after the limitations period had expired, plaintiff failed to meet the requirement of the statute, and therefore plaintiff may not avail himself of the "relation-back" theory.

Plaintiff, on the other hand, avers that his second complaint, filed in 1982, did in fact relate back to the original filing in 1976, maintaining that section 2—616 (Ill. Rev. Stat. 1981, ch. 110, par. 2—616) is not the applicable law. Rather, plaintiff contends, the pertinent provision of our Code of Civil Procedure is section 2—401(b) (Ill. Rev. Stat. 1981, ch. 110, par. 2—401(b)), which states as follows:

"Misnomer of a party is not a ground for dismissal but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires."

We are compelled to disagree. Section 2—616(d)(3) was specifically amended to eliminate injustices as a result of the procedure followed in land trust cases. Before that section was amended, a plaintiff was barred from bringing suit unless the beneficiary actually received notice within the limitations period. With the amendment of section 2—616(d)(3) in 1963, a plaintiff was allowed to bring a subsequent action against a beneficiary as long as the trustee was served within the statutory period. *Foster,* 139 Ill. App. 3d at 495, citing Ill. Ann. Stat., ch. 110, par. 2—616, Historical and Practice Notes, at 529 (Smith-Hurd 1983).

We find that the requirements of section 2—616(d) are quite clear: a plaintiff must meet all five provisos in order to allow the amended complaint to relate back to the original filing of the

action. Here, plaintiff failed to serve the trustee within the required period; he therefore does not meet the section 2—616(d)(4) mandate that the beneficiary of the trust have notice within the limitations period. Consequently, since the amended complaint does not relate back to the original filing, defendants have a valid statute of limitations defense.

However, plaintiff claims that defendants have waived their statute of limitations defense by failing to raise it within the time for pleading, as is specifically required by section 2—619, and now seek approval of their attempt to avoid that commandment by introducing it in a motion for summary judgment, a stratagem that does not insulate it from a successful attack. (*Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 447 N.E.2d 1358.) Plaintiff further contends that defendants should not be allowed to raise an affirmative defense permitted to be asserted by section 2—619 (Ill. Rev. Stat. 1981, ch. 110, par. 2—619) long after the time for pleading has passed (*Romero v. Ciskowski* (1985), 137 Ill. App. 3d 529, 484 N.E.2d 1150) and that to hold otherwise renders section 2—619 a nullity.

Plaintiff cites well-recognized authority that statutory provisions are to be interpreted to give them meaning if possible; the courts will not assume they are superfluous. (*Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 390 N.E.2d 835.) Nor will the legislature be presumed to have enacted an ineffective law. (*Moran v. Katsinas* (1959), 16 Ill. 2d 169, 157 N.E.2d 38.) Plaintiff also urges that if there is an apparent conflict between a general statutory provision and a more specific one, the latter provision prevails. *People ex rel. Myers v. Pennsylvania R.R. Co.* (1960), 19 Ill. 2d 122, 129, 166 N.E.2d 86.

Advancing the foregoing principles for guidance, plaintiff reasons that the dichotomous provisions of the Code of Civil Procedure, *i.e.,* section 2—619(a) and section 2—1005, can be easily reconciled: section 2—1005 is much more general; it obviously deals with summary judgments under any circumstance where it appears that there is no genuine issue of material fact; whereas section 2—619 refers only to affirmative defenses which bar a plaintiff's claims. Section 2—619 lists, of course, several specific types of affirmative defenses, including the statute of limitations, as a time bar to the bringing of an action. (Ill. Rev. Stat. 1981, ch. 110, par. 2—619(5).) On the other hand, the plaintiff posits, the two sections are irreconcilable if the defenses provided in section 2—619 can be raised through section 2—1005 long after the time for pleading has passed. Plaintiff asserts that this would be tantamount to holding that section 2—1005 has repealed section 2—619 by implication, a ruling our courts do not favor except in the clearest

possible case. *Pennsylvania R.R. Co.*, 19 Ill. 2d at 129.

Plaintiff's argument that in cases where a conflict exists between seemingly irreconcilable yet pertinent statutory provisions, one general and the other specific, the more specific should prevail, has strong appeal as a respectably authoritative method of resolving the instant dispute, and were it not for the distinctive circumstances we encounter here, we should be inclined to adopt it as dispositive of the issue. However, we believe that procedural matters that are marked by singularly distinguishing characteristics as are found here should be adjudicated on a case-specific basis.

█ Thus, while the cases are legion wherein it is acknowledged that an affirmative defense may be raised in a motion for summary judgment as well as in the pleadings (*Metropolitan Sanitary District v. Pontarelli & Sons, Inc.* (1972), 7 Ill. App. 3d 829, 288 N.E.2d 905; *Harris Trust & Savings Bank v. Illinois Fair Plan Association* (1979), 68 Ill. App. 3d 934, 386 N.E.2d 341; *Florsheim v. Travelers Indemnity Co.*, 75 Ill. App. 3d 298, 393 N.E.2d 1223; *Chaplin v. Geiser* (1979), 79 Ill. App. 3d 435, 398 N.E.2d 628; *Midwest Bank & Trust Co. v. Village of Lakewood*, 113 Ill. App. 3d 962, 447 N.E.2d 1358; *Romero v. Ciskowski*, 137 Ill. App. 3d 529, 484 N.E.2d 1150), we apprehend nothing in our Code of Civil Procedure or in the cases construing its provisions to suggest that a defendant who has the statute of limitations available to him as an affirmative defense to an action brought against him may blithely disdain invoking it in his answer and may further indulge himself in a 3½-year dalliance before he deigns to raise it, in the contemplation that our courts, with an alacrity he does not exact of himself, will serve up the felicitous response—especially where during that 3½-year period the parties engaged in some 22 docketed activities, including what appears to be plenary discovery, and where the case has been called for trial nine different times and each time continued at defendant's request. The law, it is safe to say, no less than equity, aids the vigilant. And although section 1—106 of our Code of Civil Procedure requires its provisions "to be liberally construed," nowhere does it authorize the summary judgment procedure to be employed in gossamer attempts at seeking the Northwest Passage around the hindrances to be found in section 2—619, which, being of equal rank and dignity with those in section 2—1005, are also to be accorded a liberal construction. These matters are best left to the informed discretion of the trial court, which we find in this case to have been commendably exercised and which we consequently uphold.

## II

██ The second issue raised by defendants is that the court erred in setting aside a release executed by the plaintiff. Settlements between parties of a disputed claim are encouraged and favored by the courts and should be given full force and effect. (*Knoll v. Swanson* (1968), 92 Ill. App. 2d 398, 234 N.E.2d 543.) In the absence of mistake or fraud, a settlement is conclusive on the parties as to all matters included therein and will not be lightly altered or set aside. (*McCracken Contracting Co. v. DePrizio & Associates, Inc.* (1984), 122 Ill. App. 3d 680, 462 N.E.2d 682.) However, a unilateral mistake is insufficient to invalidate an agreement compromising and settling a disputed claim. (*Barth v. Reagan* (1986), 146 Ill. App. 3d 1058, 497 N.E.2d 519.) If a plaintiff is incapable of comprehending a release, it may be set aside. (*Florkiewicz v. Gonzalez* (1976), 38 Ill. App. 3d 115, 347 N.E.2d 401.) Further, the party urging the invalidity of the release bears the burden of proving that the release should be set aside. *Welsh v. Centa* (1966), 75 Ill. App. 2d 305, 221 N.E.2d 106.

Defendants claim that the sole reason advanced by plaintiff for setting aside the release is that he did not feel that he was going to net enough of the proceeds for himself. Pointing to the plaintiff's testimony that his attorney advised him that he would net between $1,700 and $1,800, and that Reverend Smith told him that he would net $2,500, defendants argue that plaintiff's mistake was unilateral and self-induced. Defendants contend that plaintiff's inability to read and write are irrelevant to the nature of his mistake or misunderstanding and that plaintiff's testimony manifests an ability to understand amounts of money, the proportion that he would receive, and the nature of the settlement offers.

██ Here, the trial judge, having had the opportunity to observe plaintiff and to hear his testimony, and to consider the affidavits of counsel for both parties, could properly conclude that because of plaintiff's illiteracy and the difficulty he had in communicating with his attorney, made all the more rigorous by his lack of a telephone, plaintiff did not understand the nature of what he had signed. Moreover, plaintiff's rescission of the release was communicated to defense counsel on the same day that he received it, and concomitantly, the attorneys agreed to reset the hearing date on plaintiff's motion for reconsideration; no funds changed hands, no stipulation to dismiss was agreed to or presented to the judge, and no order of dismissal was entered. It is clear, then, that defendants placed no reliance on the document, nor do they make any claim that they

changed their position in reliance thereon, to their prejudice. Accordingly, we find that the trial court was prodigal in fulfilling its obligation to review all the circumstances surrounding the purported settlement in order to determine its validity, and its determination to set aside plaintiff's release was not against the manifest weight of the evidence. *Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 439, 437 N.E.2d 817.

## III

Third, the defendants charge that the trial court erred in failing to direct a verdict in favor of the defendants and against the plaintiff. It is by this time well established and well defined that the standard for directing a verdict is whether all the evidence, when viewed in the aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could be reached. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Defendants complain that plaintiff's evidence shows nothing more than the existence of a natural accumulation of ice or snow, and that in the absence of a contract, there is no duty on the part of a landlord to remove ice or snow from common areas that are under the landlord's control. (*Lewis v. W.F. Smith & Co.* (1979), 71 Ill. App. 3d 1032, 390 N.E.2d 39.) Defendants further assert that plaintiff must in some way show that the defendants caused an unnatural accumulation, or that they aggravated a natural accumulation, and that the condition existed long enough to charge the defendants with notice or knowledge of the condition. (*Bansch v. Donnelly* (1979), 77 Ill. App. 3d 922, 396 N.E.2d 869.) Finally, defendants claim that they did not have a duty to remove ice or snow tracked in from out-of-doors. *Lohan v. Walgreens Co.* (1986), 140 Ill. App. 3d 171, 488 N.E.2d 679.

■ A review of the record here discloses that the trial court devoted studious attention to the facts, carefully weighed them, dutifully observed the demeanor of the witnesses, diligently judged their credibility and correctly declined to direct a verdict in favor of defendants, for there was ample evidence upon which the jury could find that the door leading to the vestibule would constantly blow open, and could not be kept shut, resulting in the constant blowing of water, ice, or snow into the hallway. These elements, the jury found, formed an unnatural accumulation, the result of a broken door, and was not caused by water, ice, or snow being tracked in by residents. Moreover, the problem had been long-standing, and the defendants had at least four

persons who were at the building to perform such tasks as rent collection, cleaning, and advising the defendants of any untoward conditions. Defendants, being in control of the premises, had notice and therefore the duty to prevent or remove the unnatural accumulation of ice or snow. (*Foster v. Cyrus & Co.* (1971), 2 Ill. App. 3d 274, 276 N.E.2d 38.) Defendants fail to meet the *Pedrick* standard herein.

Accordingly, for all of the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

EGAN, P.J., and BILANDIC, J., concur.