POLO NATIONAL BANK, Plaintiff-Appellant, v. DAVID W. LESTER *et al.*, Defendants-Appellees.

Second District   No. 2—88—0715

Opinion filed May 19, 1989.

Craig E. McGuire, of Polo, for appellant.

Gregory H. Clark, of Rockford, for appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Polo National Bank, filed suit against David and Linda Lester for $5,286.94 allegedly owed on a $23,000 promissory note. The trial court found for defendants, ruling that a release of trust deed executed by Polo National Bank released the total amount owed on the note. Plaintiff appeals, contending that the release of the trust deed released only the security and not the note. For the reasons stated below, we reverse.

The Lesters executed a promissory note to Polo National Bank for $23,000. As security for the note, the Lesters executed a second mortgage on their residence in the form of a trust deed. Subsequently, the residence was sold, and Polo National Bank received $19,105.25 to apply to the $23,000 note. Prior to the closing on the house, Polo National Bank also executed and delivered a release of trust deed on the property. The release stated in relevant part:

"The party secured in and by a certain trust deed executed by

\* \* \*

do hereby acknowledge receipt of full payment and satisfaction of the moneys secured in and by said document, and in consideration thereof do hereby FOREVER release and discharge the same, and quit claim all right and interest to and in the premises therein described or conveyed, for a description whereof reference may be had to said document or said record thereof. Said trust deed was made to secure one or more promissory notes bearing even date therewith aggregating the sum of Twenty-three thousand and 00/100 \*\*\* Dollars. I further certify that said note or notes has or have been presented to me with satisfactory evidence that the same, with interest due thereon, has or have been fully paid and cancelled."

After Polo National Bank received $19,105.25 from the house sale, it notified defendants in writing that they still owed $5,286.94 on the note. Plaintiff sent defendants four written notices. In the third notice, plaintiff asked defendants to bring their obligation to current status and requested that defendants make a payment of at least $185.45 to pay off the interest. Plaintiff also asked defendants to deliver title of their Cadillac as collateral for the amount owed. Two weeks after this notice was sent, David Lester made a cash payment of $185.45.

At trial, David Lester testified it was his understanding that the bank's receipt of the proceeds from the house sale would settle the obligation owed on the note. He stated that this was what his real estate agent told him. He also said he was never told by anyone at Polo National Bank that he would have to pay for a deficiency that resulted from the house sale. As for the $185.45 payment he made after the house sale, Lester explained that he made that payment under the belief that he owed this amount on a different loan with Polo National Bank. Lester admitted that the normal payment on this different loan was $368.19, but he stated that he believed the $185.45 was an interest payment he owed on that loan.

Doug Harper testified he handled defendants' account at Polo Na-

tional Bank. He stated the bank never intended to release the total amount due on the note in executing the release of trust deed; it only intended to release the security. The bank still possessed the note, which had never been canceled. Harper stated he talked with David Lester before the house closing, and they talked about working together to pay off the amount defendants would owe after closing. When the trial court asked Harper if he ever told defendants before the house was sold that they would be responsible for a deficiency, Harper replied that he felt he did, but he could not recall a specific conversation or date of conversation.

The trial court held the trust deed release operated as a complete release of the note. The court found the parol evidence rule applied to the release and determined that two exceptions to the rule were not present; the release was not ambiguous and there was no evidence of mutual mistake. The court then stated that it could consider parol evidence where the document did not state the true intent of the parties. The court concluded that the extrinsic evidence did not support plaintiff's position that it did not intend to release defendants' obligation on the note.

■ Plaintiff contends the trial court erred in finding that the trust deed release also operated to release the note. The general standard of review in a case where the evidence consists mainly of documents is that the court is not bound by the trial court's finding and may make an independent determination on the facts. (*Howard A. Koop & Associates v. KPK Corp.* (1983), 119 Ill. App. 3d 391, 398.) Where, however, extrinsic evidence is introduced to aid the interpreting of a contract, the determination of the trial court will not be reversed unless it is contrary to the manifest weight of the evidence. *Howard A. Koop & Associates*, 119 Ill. App. 3d at 398.

■ In this case, the trial court properly found that the parol evidence rule applied to the release. A release is a contract wherein a party abandons a claim to a person against whom the claim exists. (*Shultz v. Delta-Rail Corp.* (1987), 156 Ill. App. 3d 1, 10; *Costa v. Stephens-Adamson, Inc.* (1986), 142 Ill. App. 3d 798, 800.) Therefore, its construction is governed by the rules of law for contracts, specifically in this case, the parol evidence rule. (*Shultz v. Delta-Rail Corp.* (1987), 156 Ill. App. 3d 1, 10; *Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 439.) After finding that the parol evidence rule applied to this case, the trial court considered the extrinsic evidence presented by the parties, stating that an exception to the parol evidence rule exists where the document fails to exhibit the true intent of the parties.

The trial court's basis for considering parol evidence was improper. There is no exception to the parol evidence rule that allows a court to consider parol evidence merely because there is an assertion that the document does not exhibit the intent of the parties. The court must first find that a document is ambiguous before it may consider extrinsic evidence to resolve the parties' intent. Where no ambiguity is presented, the meaning of the agreement and the intention of the parties must be asertained from the words of the document. (*Shultz v. Delta-Rail Corp.*, 156 Ill. App. 3d at 10; *Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 565.) The trial court found in this case, and we agree, that the release is not ambiguous. We find, however, that extrinsic evidence was properly introduced and considered, though for a reason other than the one enunciated by the trial court. Extrinsic evidence is permissible to show that the recital of consideration in a deed or other like document contract is not the actual consideration. (*Wright v. Buchanan* (1919), 287 Ill. 468, 478; *First United Presbyterian Church v. Christenson* (1975), 33 Ill. App. 3d 928, 935, *rev'd on other grounds* (1976), 64 Ill. 2d 491.) The exception may be invoked provided that such showing does not change or defeat the legal operation and effect of the document. *First United Presbyterian Church*, 33 Ill. App. 3d at 935.

In this case, the trust deed release states that the trustee acknowledges full payment and cancellation of the note. This statement is a recital of the consideration for release of the trust deed. It is proper to consider extrinsic evidence to determine whether the consideration recited is the actual consideration so long as this does not defeat the legal operation of the release. Since Polo National Bank does not contest the validity of the release, extrinsic evidence may be considered. The evidence is uncontroverted that Polo National Bank did not receive full payment on the $23,000 note as recited in the release. There is no dispute that the proceeds from the house sale which plaintiff received amounted to only $19,105.25. The evidence also showed conclusively that Polo National Bank still possessed the note, which was signed by defendant, and it had not been marked canceled. Thus, the actual consideration for the trust deed release was $19,105.25, not the full payment and cancellation of the note as recited in the release.

Under section 3—307 of the Uniform Commercial Code (UCC), when the signature on a note is admitted or established, production of the instrument entitles a holder to recover unless the defendant establishes a defense. (Ill. Rev. Stat. 1987, ch. 26, par. 3—307(2); *Tuttle v. Rose* (1981), 102 Ill. App. 3d 865, 867.) Defendant has

the burden of establishing any defense, including payment, by a preponderance of the evidence. Ill. Ann. Stat., ch. 26, par. 3—307, comment at 204; par. 3—603, comment at 396 (Smith-Hurd 1963); *Tuttle*, 102 Ill. App. 3d at 867.

■ Defendants contended the trust deed release conclusively established that the note was released by plaintiff. Section 3—605 of the UCC provides that a holder of a note may discharge the debtor by renouncing his rights by a writing signed and delivered. (Ill. Rev. Stat. 1987, ch. 26, par. 3—605(1)(b).) In our opinion, the trust deed release fails to prove by a preponderance of the evidence that Polo National Bank discharged the total amount owed on the note. The trust deed release does not state that the obligation on the note is discharged or released. It states that the security, the trust deed, is released. The recital in the release that the trustee acknowledged full payment and satisfaction on the note does not release the note. As already discussed, the recital of consideration may be disproved by extrinsic evidence, and the evidence is undisputed that plaintiff did not receive full payment.

We do not believe defendants have proved by a preponderance of the evidence that plaintiff discharged the note in consideration of the $19,105.25 it received from the house sale. Not only does the release not prove this, but the extrinsic evidence introduced also fails to prove this contention. Doug Harper, who handled defendants' account for Polo National Bank, testified that the bank did not intend to release the note when it executed the trust deed release. Plaintiff produced four letters sent to defendants after the house sale which demanded payment on the deficiency. Harper also testified that he talked with defendants about the fact that the house sale would not cover the total amount owed on the note, and he told them that they would work together to get it paid off.

Defendant David Lester denied he was ever told this by anyone from Polo National Bank; however, he also was very unclear about whether he was told that he would not be responsible for a deficiency. He stated his real estate agent told him something to this effect, but he did not state that Harper ever made this statement to him. David Lester stated he believed his debt was canceled after the sale of his house, but the evidence showed that he made an interest payment on the note after the house sale. He made a payment of $185.45 after he received his third letter from Polo National Bank telling him he must bring this loan current and make at least a minimum payment of $185.45. Though Lester stated that he believed he was paying an interest payment on a different loan, we find this explanation implausi-

ble since the letter clearly stated which loan was concerned.

We find that plaintiff released only the trust deed in consideration of the $19,105.25. The trial court's decision that the trust deed release discharged the note is against the manifest weight of the evidence. The decision of the circuit court of Ogle County is therefore reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

UNVERZAGT, P.J., and McLAREN, J., concur.