CARGILL FERROUS INTERNATIONAL,
a division of Cargill, Incorporated
Plaintiff,

v.

M/V ELIKON, their engines, tackle,
boilers, furniture, apparel, etc.
in rem, Defendant,

Sphinx Navigation Limited, Defendant,

Canadian Forest, Defendant.

No. 92 C 7931.

United States District Court,
N.D. Illinois,
Eastern Division.

May 16, 1994.

Stephen C. Veltman, Pretzel & Stouffer, Chtd., Chicago, IL, for plaintiff.

Cornelius P. Callahan, Jr., Callahan & Christensen, Mark E. Christensen, Christensen & Ehret, Chicago, IL, for Canadian Forest.

### MEMORANDUM OPINION

GRADY, District Judge.

In a memorandum opinion dated March 18, 1994, 154 F.R.D. 193, the court notified the parties of its intent to decide the remainder of defendant Canadian Forest Navigation Co., Ltd.'s dismissal motion as a motion for summary judgment under Fed.R.Civ.P. 56. The court also gave the parties a reasonable opportunity to file additional exhibits, affidavits or other factual material. The court now proceeds to grant summary judgment in favor of the defendants, for the reasons stated in this opinion.

### BACKGROUND

Cargill Ferrous International ("Cargill") has filed this lawsuit under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.*, seeking to recover for damage to a quantity of cold-rolled steel coils shipped from Brazil to Chicago aboard the M/V Elikon. Cargill sued several defendants, including the vessel's owner (Sphinx Navigation Ltd.), the vessel (sued *in rem*), the operator of the dock (Federal Marine Terminals, which since has been dismissed from this

case), and the movant, Canadian Forest Navigation Co., Ltd. ("Canadian Forest"), which had chartered the vessel from its owner.

The cold-rolled steel coils were packed in metallic can-like containers wrapped in steel bands and were shipped "FIOS," or "free in and out stowed." This shipping contract term provided that Cargill, and not Canadian Forest, was responsible for arranging the loading, stowing and unloading of the cargo at Cargill's expense. The Elikon arrived in Chicago on the morning of November 29, 1991. Cargill and its agent learned of the arrival and dispatched a marine surveyor to inspect the goods as they were being unloaded from the vessel. At 11:30 p.m. on December 2, the cargo was completely unloaded. Cargill's surveyor inspected the cargo as it was being unloaded, and this inspection continued into December 3. During this time, the surveyor viewed only about 25 percent of the cargo, specifically the top layer on board ship and the outermost row in storage at the dock. And although the surveyor inspected the "cargo," he did not view any of the coils; his inspection was limited to viewing the metallic containers within which the coils were packed. According to the surveyor, the coils themselves could not be inspected until they could be unpacked, or "decanned," at their ultimate destinations sometime later. A reasonable inspection would require looking at the exterior of each coil individually after unpacking.

Cargill did not file suit until December 3, 1992, or one year and one day after the cargo of coils was completely unloaded from the Elikon. COGSA carries a one-year statute of limitations. Canadian Forest's motion requires the court to consider whether Cargill's claims are barred by COGSA's limitations provision.

## ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91

L.Ed.2d 265 (1986). A "genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Dribeck Importers, Inc. v. G. Heileman Brewing Co.*, 883 F.2d 569, 573 (7th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). In considering such a motion, the court must view all inferences in the light most favorable to the nonmoving party. *See Regner v. City of Chicago*, 789 F.2d 534, 536 (7th Cir.1986).

Section 1303(6) of COGSA establishes a one-year statute of limitations for claims related to damaged cargo:

> In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered....

46 U.S.C. § 1303(6). Accordingly, the statute begins to run upon "delivery" of the goods. In this case, if delivery took place before December 3, 1991, Cargill's filing of this lawsuit on December 3, 1992, would be too late, and Cargill's claims would be barred by the statute of limitations.

Several courts have addressed the question of what constitutes a "delivery" that triggers the statute of limitations under § 1303(6). The parties agree that "delivery" is distinct from mere "discharge" under COGSA. That much is obvious, as simply dumping the cargo unannounced onto a lonely dock in the middle of the night would not constitute a delivery. Delivery, argues Canadian Forest, occurs when the consignee has notice of the cargo's arrival plus an opportunity to accept the cargo. Canadian Forest relies on cases in which the courts viewed delivery as being complete once the goods leave the ship's slings and pass to the consignee or the consignee's authorized agent. *See Mendes Junior Int'l Co. v. M/V Sokai Maru*, 758 F.Supp. 1169, 1171 (S.D.Tex.1991), *vacated on other grounds*, 978 F.2d 920 (5th Cir.1992); *C. Tennant Sons & Co. v. Norddeutscher Lloyd*, 220 F.Supp. 448, 449 (E.D.La.1963). Cargill cites several cases in which "delivery," in

particular circumstances, was held to be complete for purposes of § 1303(6) only after the consignee had a reasonable opportunity to inspect—rather than just accept—the goods, in addition to notice of their arrival. *See Orient Atlantic Parco, Inc. v. Maersk Lines,* 740 F.Supp. 1002, 1005 (S.D.N.Y.1990); *Atlantic Mut. Ins. Cos. v. M/V Balsa 38,* 695 F.Supp. 165, 170 (S.D.N.Y.1988); *see also Lithotip, CA v. S.S. Guarico,* 569 F.Supp. 837, 840 (S.D.N.Y.1983) ("delivery implies an opportunity for the consignee or his agent to observe defects"). Courts inferring an opportunity to inspect as part of "delivery" under COGSA have not, however, held that the statute of limitations does not begin to run until an actual inspection takes place. *Lithotip, CA v. S.S. Guarico,* 592 F.Supp. 1280, 1281 (S.D.N.Y.1984). In any case, courts have little or no authoritative guidance on how to discern the meaning of "delivery" under § 1303(6). *See Balsa 38,* 695 F.Supp. at 167 ("There is no statutory definition, no legislative history, little case law, and no Supreme Court or Second Circuit authority directly on point. Each of the relatively few cases turns on its own circumstances.")

■ But the court can be guided by reference to certain general principles concerning the law of limitation of actions. Statutes of limitation represent a pervasive legislative judgment that justice requires an adversary to be put on notice to defend for a specified period of time, after which "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) (quoting *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). *See also Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1527 (7th Cir.1990) ("statutes of limitations are intended to secure repose for defendants—to let them go about their business, after a definite time, untroubled by the fear of being sued"); *Mikinberg v. Baltic Steamship Co.,* 988 F.2d 327, 330 (2d Cir.1993) (noting that a limitation period's release of adversaries from the prospect of litigation lends certainty and finality to prospective litigation, and holding that COGSA's limitations period was not tolled while plaintiff awaited the results

of defendant's investigation into plaintiff's missing cargo).

The undisputed facts show that Cargill knew of the Elikon's arrival, and that its agent was present as the cargo was being unloaded. From this, Canadian Forest argues that delivery was complete as of 11:30 p.m. on December 2, 1991. Cargill argues that Canadian Forest's position would require the court to hold that 30 minutes, or the time from the unloading of the final coil container until 12:01 a.m. December 3, is a reasonable time within which to inspect this large quantity of sealed cargo. In *Balsa 38,* the court held that where the cargo of palletized bales of twine, of different markings and physical characteristics, was delivered pursuant to six different bills of lading in a manner that created "chaos out of order," delivery did not occur "until the consignee has had a reasonable time to restore order from chaos." *Balsa 38,* 695 F.Supp. at 170. Cargill analogizes to the facts in *Balsa 38,* arguing that the statute could not have begun to run until after Cargill could restore order from chaos at the dock.

Cargill can show the presence of a genuine issue of material fact only if, as a matter of law, delivery occurred after December 2, 1991. But the court believes that delivery occurred at 11:30 p.m. on December 2, when there is no dispute that the cargo was completely unloaded from the Elikon and into the custody of Cargill's agents. At that time, Cargill was aware the shipment had arrived, and a Cargill agent was present to accept the shipment. The court declines to follow the cases holding that "delivery" under COGSA includes a reasonable time to inspect. These cases require a determination of what time period would be reasonable in a wide variety of distinct circumstances. Under such an interpretation of "delivery," courts must make an *ex post* determination of reasonableness—and of when the statute began to run—long after the time of the cargo's damage or loss. Defendants would have no idea of how long they might be subject to suit under COGSA, and the legislative purpose and intent of § 1303(6) would be defeated.

The facts of the instant case offer an apt illustration. Cargill does not suggest a certain time when delivery occurred in this case. It asserts that the steel coils could not have been inspected for defects until after they could be removed from the containers. That could only occur an unspecified amount of time later, when the containers would reach their subsequent destinations. Assume that some of the containers were opened a month later, and that a portion of the coils were found to be damaged. Would this constitute delivery, or would the statute be tolled until *all* of the containers could be opened? How many coils need to be inspected or found damaged before Cargill can be said to have had a reasonable opportunity to inspect? These questions cannot be answered definitively, but even if they could be, the answers probably would give little general guidance for other cases involving different types of cargo or different circumstances. It seems likely that each case might be *sui generis*. If potential COGSA defendants are forever in the dark about when the limitations period begins to run, the statute of limitations fails to serve its intended purpose.

Had the legislature, in enacting the statute of limitations in § 1303(6), wished the statute to accrue with the discovery of the harm or after a reasonable time to inspect, it could have said so. It did not. Instead, the legislature used the word "delivery," and the court will interpret that word in a manner consistent with the notion that statutes of limitation are intended to give defendants notice of when claims against them will become stale. *See Kubrick*, 444 U.S. at 117, 100 S.Ct. at 356–57. The question of whether the concept of "delivery" under COGSA should be broadened to accommodate Cargill in this case, or similarly situated parties in other cases, is best addressed by the legislature, and not the court.

Finally, even if the court were to follow the *Balsa 38* case and hold that delivery has not occurred until the consignee can "restore order from chaos" of the cargo's discharge, the court does not believe Cargill could present a genuine issue of material fact under that standard either. In this case, the steel coils were shipped in metallic containers wrapped in steel bands. Cargill has presented no facts or evidence showing anything chaotic about the delivery. Unlike *Balsa 38*, in which the cargo of palletized twine was shipped under six different bills of lading and arrived in a farrago of different markings and physical characteristics, *see Balsa 38*, 695 F.Supp. at 170, in the instant case the cargo was of a uniform nature and was packed in a relatively uniform manner in the metallic containers. Multiple bills of lading (at least four, from the evidence presented so far to the court) were involved here, but they all described the exact same type of cargo: cold-rolled steel coils. In addition, the fact that some of the coils might have been damaged was indicated clearly on the face of the bills of lading. The bills include remarks indicating that all of the coils were loaded initially onto the Elikon with rust-stained covers. A few of the coils were loaded with exposed contents. Others were loaded with dented or torn covers and outer edge protectors. Many were loaded with broken straps. These undisputed facts do not permit Cargill to argue that the cargo arrived in such disarray that it had no notice that at least some of the coils might be damaged. All Cargill or its agents needed to do was look at the bills of lading.

There is nothing unreasonable about a limitations period that begins to run on the date of delivery. A year after delivery is time enough. Cargill had a full year from December 2, 1991, to investigate the condition of the cargo and to file this lawsuit. For some reason it waited more than a year before filing suit. Even where a plaintiff files only a short time after the expiration of the limitations period, dismissal is warranted for lack of subject matter jurisdiction. *See Capitol Leasing Co. v. Federal Deposit Ins. Corp.*, 999 F.2d 188, 193 (7th Cir.1993) ("Capitol missed a deadline it easily could have discovered by reading the statute. The district court had no jurisdiction over its untimely claim and properly dismissed Capitol's suit pursuant to Rule 12(b)(1).") Because the COGSA statute of limitations had expired as of December 2, 1992, a day before Cargill filed this lawsuit, the action is barred by the statute. Because the suit is barred by limitations there is no genuine issue of material

fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). Summary judgment must be entered in favor of all remaining defendants.

## CONCLUSION

For the foregoing reasons, the court will enter summary judgment in favor of all defendants.