MARJORIE OCASEK, Adm'r of the Estate of Donna Sclafani, Deceased, *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (2nd Division)    No. 1—94—1920

Opinion filed August 22, 1995.—Rehearing denied October 19, 1995.

Cooney & Conway, of Chicago (James E. Ocasek, of counsel), for appellant Marjorie Ocasek.

Reibman, Hoffman & Baum, of Chicago (David M. Baum, of counsel), for appellant Hope D. Hughes.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and George J. Yamin, Jr., Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiffs appeal from the circuit court's award of summary judgment (735 ILCS 5/2—1005 (West 1992)) in favor of defendant City of Chicago (the City), based on the statute of repose contained in section 13—214(b) of the Code of Civil Procedure (735 ILCS 5/13—214(b) (West Supp. 1993)). We affirm.

On March 17, 1986, Donna Sclafani (Sclafani) and Hope D. Hughes (Hughes) were traveling southbound on North Lake Shore Drive (the Drive) in the City of Chicago when a private vehicle in the northbound lanes crossed the median and collided with their vehicle, severely injuring both of them. Sclafani's injuries proved fatal. Plaintiffs' complaint alleged that the City had been negligent in the design and maintenance of the Drive at the location of the accident by "[f]ail[ing] to provide an adequate median dividing northbound and southbound traffic." According to plaintiffs, in 1966, the City, together with the Chicago Park District, the County of Cook, and the State of Illinois, entered into an agreement to redesign a section of the Drive (the redesign agreement), including the location where the accident occurred. Because City officials at that time recognized that differences in elevation of the opposing streams of traffic of parts of the redesigned section created a dangerous condition and were thus the cause of cross-over accidents, they recommended and approved the installation of a "Steel Plate Beam Guard Rail" to supplement the then existing "relatively narrow sloped median" of the roadway; nevertheless, the redesign project was completed without installing the guardrail.

■ Plaintiffs' first contention on appeal is that the circuit court erred in granting the City summary judgment based upon the statute of repose since a genuine issue of material fact remained as to the completion date of the redesign project from which date the repose period would have begun to run.

Summary judgment motions (735 ILCS 5/2—1005 (West 1992)) permit the trial court to determine whether any genuine issue of material fact exists in the action, and if not, to provide an expedient means of resolution. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) In deciding the motion, the court should construe all the evidence before it strictly against the movant. (*Reed v. Bascon* (1988), 124 Ill. 2d 386, 393, 530 N.E.2d 417; *Purtill*, 111 Ill. 2d at 240.) Our supreme court has warned that while summary judgments are to be encouraged in the interest of the prompt disposition of lawsuits, they are a drastic measure; consequently, summary judgment should be granted only where the movant's right to judgment is so clear as to be free from doubt. (*Bascon*, 124 Ill. 2d at 393; *Purtill*, 111 Ill. 2d at 240.) This court reviews the grant of summary judgment *de novo* (*Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 72, 587 N.E.2d 494), and this standard is of particular significance "where the evidence consists mainly of documents" (*Polo National Bank v. Lester* (1989), 183 Ill. App. 3d 411, 414, 539 N.E.2d 783), as is the case in the instant action.

Here, in its motion for summary judgment, the City argued that the applicable statute of repose for cases predicated upon design defects (735 ILCS 5/13—214(b) (West Supp. 1993)), which provides a maximum period of 14 years after construction of an improvement within which to bring suit, barred plaintiffs' claim. The circuit court denied the motion, stating that the City had failed to present sufficient evidence of the date of completion of the redesign project.

The City filed a timely motion to reconsider, attaching thereto a certified copy of an Illinois Department of Transportation (IDOT) document (the document) that "memorialize[d]" the completion date of the project as March 28, 1969, and consequently the date marking the commencement of the running of the statute of repose. Based on this new information, the court granted the City a partial summary judgment, holding that plaintiffs' counts based on negligent design were time-barred as a matter of law under the statute of repose, but that those regarding negligent maintenance were not. Thereafter, plaintiffs voluntarily dismissed the maintenance counts of their complaint, thus making the summary judgment order final and appealable.

Plaintiffs contend that the document the City attached to its motion for reconsideration was insufficient to support summary judgment since that document contains a "job" number (C—90—712—67) different from the one on the cover sheet of the City's redesign plans for the Drive (P—90—024—67); therefore, plaintiffs argue, the document could not possibly refer to the redesign project at issue here, but must necessarily refer to some other project. They also maintain that the document does not memorialize an acceptance date for any project.

However, although "Job. No C—90—712—67" appears on the document and "JOB NO P—90—024—67" appears on the cover sheet of the redesign plans, record number "C—90—712—67" appears on the cover sheet of the redesign plans as well. Moreover, the City persuades that record numbers C—90—712—67 and P—90—024—67 both refer to the redesign project. As attested to by Thomas R. Bright (Bright), an employee of IDOT, Division of Highways, Bureau of Construction, for record keeping purposes, "C" represents a construction number and "P" represents a planning number; and since construction and planning are separate activities within IDOT, records are kept under separate construction and planning numbers although both refer to the same project, as is evidenced by the fact, as mentioned above, that both record numbers appear on the cover sheet of the City's redesign plans.

We also note that nothing in the record casts the slightest doubt

on IDOT's certification that the document truly memorializes that the State accepted the redesign project on March 28, 1969, thus making that the date upon which the redesign project was officially completed and from which the statute of repose began to run. In fact, the document certified provides an inspection date of June 19, 1968, and a final scheduled inspection date of March 24, 1969, as well as an acceptance date of March 28, 1969, all for "Job No. C—90—712—67."

Consequently, we hold that no genuine issue of material fact exists as to whether the State accepted the redesign project on March 28, 1969, nearly 19 years before plaintiffs filed their complaint on March 14, 1988; the trial court was therefore correct in holding that plaintiffs' counts as to negligent design were time-barred as a matter of law.

Plaintiffs next contend that the 14-year period of repose in section 13—214(b) was enlarged in this case by section 13—214(d), which states:

> "Subsection (b) shall not prohibit any action against a defendant who has expressly warranted or promised the improvement to real property for a longer period from being brought within that period." (735 ILCS 5/13—214(d) (West Supp. 1993).)

They assert that the language in the redesign agreement stating that the improvements along the Drive would (1) "be a lasting benefit to the people in the area as well as the motorist" and (2) comply with federally adopted standards amounted to an express warranty or promise by the City within the meaning of section 13—214(d).

Where, as is the case here, a defendant has produced sufficient evidence which would entitle it to judgment as a matter of law on a statute of repose defense, the plaintiff has the burden of proving that any exception to that law applies. (See *Henderson v. Jones Brothers Construction Corp.* (1992), 234 Ill. App. 3d 871, 874, 602 N.E.2d 16 (burden of establishing exception to statute of limitations rests with party arguing that the exception applies).) "When the party opposing a motion for summary judgment bears the burden of proof on a particular issue, it must affirmatively demonstrate that there is a genuine issue of material fact requiring trial." (*Crisman v. Peoria & Pekin Union Ry. Co.* (C.D. Ill. 1994), 846 F. Supp. 716, 719.) Therefore, in order to successfully invoke the benefits of section 13—214(d), plaintiffs must present evidence demonstrating that a genuine issue of material fact exists concerning whether the City "expressly warranted or promised" the redesign of the Drive. We conclude that they have failed to do so.

■ The courts' role in interpreting a statute is to ascertain and give effect to legislative intent. (*City of Decatur v. American Federa-*

*tion of State, County, & Municipal Employees Local 268* (1988), 122
Ill. 2d 353, 364, 522 N.E.2d 1219.) In ascertaining that intent, this
"court must consider the entire statute as well as the evil to be
remedied and the object and purpose to be attained." (*People ex rel.
Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 14, 585 N.E.2d
51.) Our courts have found that statutes of repose are intended to
" 'terminate the possibility of liability after a defined period of
time.' " (*Blazek v. Nicolet, Inc.* (1988), 173 Ill. App. 3d 324, 329, 527
N.E.2d 568, quoting *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d
416, 422, 490 N.E.2d 665, 668; see also *Hayes v. Mercy Hospital &
Medical Center* (1990), 136 Ill. 2d 450, 460, 557 N.E.2d 873.) It cannot
be gainsaid that imposing finality to the possibility of litigation al-
lows defendants to go about their business, after a definite time,
untroubled by the fear of being sued. (*Village of Bellwood v. Dwivedi*
(7th Cir. 1990), 895 F.2d 1521, 1527.) As with statutes of limitations,
statutes of repose "represent a pervasive legislative judgment that
justice requires an adversary to be put on notice to defend for a
specific period of time, after which 'the right to be free of stale claims
in time comes to prevail over the right to prosecute them.' " (*Cargill
Ferrous International v. M/V Elikon* (N.D. Ill. 1994), 857 F.Supp. 45,
47, quoting *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*
(1944), 321 U.S. 342, 349, 88 L. Ed. 788, 792, 64 S. Ct. 582, 586.) Fur-
ther, a statute of repose must be liberally construed in order to fulfill
the objectives for which it was intended, and must not be enlarged by
judicial action beyond its legitimately intended scope. *Kararo v. Ruiz*
(1990), 201 Ill. App. 3d 61, 64, 559 N.E.2d 275.

A complete reading of the construction design management and
supervision section of the Code of Civil Procedure's provisions relat-
ing to limitations (735 ILCS 5/13—214 (West Supp. 1993)) reveals
that section 13—214(d) was incontrovertibly drafted to prevent the
impairment of *contractual rights* associated with express warranties
and promises. *Stelzer v. Matthews Roofing Co.* (1987), 117 Ill. 2d 186,
190, 511 N.E.2d 421 ("under the language of section 13—214(d), the
statute of limitations and the period of repose governing *actions on*
express warranties or promises of longer than [the period prescribed
in section 13—214(b)] is the length of the warranty or promise itself"
(emphasis added)); see also *Continental Insurance Co. v. Walsh
Construction Co.* (1988), 171 Ill. App. 3d 135, 139, 524 N.E.2d 1131
(pursuant to section 13—214(d), "[i]njured parties *to whom* an express
warranty or promise with respect to an improvement to real prop-
erty *has been extended* are permitted to file suit within the period of
the warranty or promise" (emphasis added)).

In the case at bar, plaintiffs offer no evidence which demonstrates

that any contractual rights associated with an express warranty or promise contained within the redesign agreement were extended to Sclafani or Hughes, or for their direct benefit, *i.e.*, plaintiffs fail to show that Sclafani and Hughes were either parties to or third-party beneficiaries of the redesign agreement. Rather, plaintiffs contend that they need not make such a showing since they are not suing under a contract theory, but under a negligence theory.

However, even though plaintiffs base their action on a negligence theory, in invoking the protection of section 13—214(d), they are essentially asserting that Sclafani and Hughes had contractual rights associated with an express warranty or promise under the redesign agreement entered into between the City, the State, the county, and the park district. But surely, plaintiffs must be aware of the legislature's intent to limit the exception created by 13—214(d) to apply only to "*actions on* express warranties or promises" (emphasis added) (*Stelzer*, 117 Ill. 2d at 190), or to individuals "*to whom* an express warranty or promise *** *has been extended*" (emphasis added) (*Continental Insurance Co.*, 171 Ill. App. 3d at 139). Consequently, since Sclafani and Hughes obviously were not parties to the redesign agreement, a determination of whether they had any contractual rights associated with an express warranty or promise under that agreement requires inquiry into whether they were third-party beneficiaries thereto.

■ As a general rule, only third parties who are direct beneficiaries have rights under a contract, and it is not enough that the third party will reap incidental benefits from the contract. (*Ball Corp. v. Bohlin Building Corp.* (1989), 187 Ill. App. 3d 175, 177, 543 N.E.2d 106.) In order to decide whether one is a third-party beneficiary, courts look to the contract to determine the intent of the parties. "The test is whether the benefit to the third person is direct to [her] or is but an incidental benefit to [her] arising from the contract." (*Wheeling Trust & Savings Bank v. Tremco, Inc.* (1987), 153 Ill. App. 3d 136, 140, 505 N.E.2d 1045.) A third party is a direct beneficiary when the contracting parties have manifested an intent to confer a benefit upon the third party. *Ball Corp.*, 187 Ill. App. 3d at 177.

■ With respect to construction contracts, this court has held that "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the construction of [a structure] in that they will be users of it. The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." (*Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 373, 432 N.E.2d 1009.) Further, "[l]iability to a third-party [*sic*] must af-

firmatively appear from the contract's language and from the circumstances surrounding the parties at the time of its execution, and cannot be expanded or enlarged simply because the situation and circumstances justify or demand further or other liability." *Ball Corp.*, 187 Ill. App. 3d at 177.

Additionally, "[i]n Illinois, the promisor's intention must be evidenced by an express provision in the contract identifying the third-party beneficiary." (*Wheeling Trust & Savings Bank*, 153 Ill. App. 3d at 140.) Courts require an express provision because "there is a strong presumption that parties to a contract intend that the contract's provisions apply to only them and not to third parties. In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Ball Corp.*, 187 Ill. App. 3d at 177.

■ In the case *sub judice*, plaintiffs have the burden of proving that the City intended to confer a direct benefit upon Sclafani and Hughes (see *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 56, 421 N.E.2d 182); yet plaintiffs utterly failed to meet that burden in the trial court. Indeed, they did not even argue that Sclafani and Hughes were third-party beneficiaries of the redesign agreement, but mistakenly assumed that they did not need to make such a showing because of their claim that their action sounds in tort. Assuming, however, that they did put forth such an argument, they could not identify any language in the redesign agreement which constituted a virtually express declaration to overcome the presumption that the City, the State, the county, and the park district, contracted for themselves only, for, to be sure, the redesign agreement in no way evidences any intent to directly benefit a particularly identifiable class of people to which Sclafani and Hughes belonged.

Although the preamble of the agreement declares that the redesign of the Drive would "be a lasting benefit to the people in the area as well as to the motorist," such language evinces nothing more than that most contracts entered into by a governmental unit are made for the benefit of the public at large. (See Restatement (Second) of Contracts § 313, Explanatory notes, Comment *a*, at 472 (1981) ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested").) Also, the mere fact that the agreement states that the redesign of the Drive would comply with Federal standards does not manifest an intent to confer a direct benefit upon Sclafani and Hughes.

Furthermore, plaintiffs fail to convince that the City "expressly warranted or promised" the redesign of the Drive. For the same

reasons stated above, that the City intended the redesigned portions of the Drive to "be a lasting benefit to the people in the area as well as to the motorist" does not amount to an express warranty or promise. In addition, the argument that the language in the agreement stating that the redesign of the Drive would comply with Federal standards amounted to an express warranty or promise can be rejected out of hand. Plaintiffs rely exclusively on their expert's opinion that Federal standards required the redesigned portion of the Drive where the accident occurred to have had "a use expectancy of at least 25 years." However, all that their expert clearly meant by that phrase was that it would have been economically sound for the City to install median guardrails where the accident occurred, since, according to the then applicable Federal standards, such guardrails would have had a "use expectancy of at least 25 years"; that is, according to the expert, the cost of installing the guardrails could have been depreciated over a number of years, and the City could not now claim otherwise as a budgetary "excuse" for not having installed them along the Drive. But this reasoning has no bearing whatsoever on whether or not the City "expressly warranted or promised" the redesign of the Drive pursuant to section 13—214(d).

We conclude, therefore, that Sclafani and Hughes were not third-party beneficiaries to the redesign agreement, and even if they were, plaintiffs have failed to show that the City "expressly warranted or promised" the redesign of the Drive; consequently, plaintiffs may not avail themselves of the benefits afforded by section 13—214(d).

■ Plaintiffs' final contention is that the City waived the affirmative defense of the statute of repose by raising it for the first time in their January 26, 1993, motion for summary judgment, nearly five years after plaintiffs filed their complaint. They assert that the City had a duty to raise any limitations defense at the earliest possible time but presented no explanation for failing to do so. *McKinnon v. City of Chicago* (1993), 243 Ill. App. 3d 87, 92, 612 N.E.2d 67; *Turner v. Cosmopolitan National Bank* (1989), 180 Ill. App. 3d 1022, 1029, 536 N.E.2d 806

Plaintiffs' reliance on *McKinnon* is unwarranted. There, the court held merely that a limitations defense cannot be asserted for the first time on appeal, which, of course, is not the case here, and in support of that holding it simply stated that the party wishing to plead such a defense has a duty to do so at the earliest possible moment. (*McKinnon*, 243 Ill. App. 3d at 92.) Likewise, plaintiffs' reliance on *Turner* is of no avail. There, the court stated that the cases are legion wherein an affirmative defense was allowed to be raised in a motion for summary judgment as well as in the pleading stages, and that

such "matters are best left to the informed discretion of the trial court." *Turner*, 180 Ill. App. 3d at 1029.

Furthermore, section 2—616(a) of the Code of Civil Procedure specifically provides that amendments adding new defenses may be allowed at any time prior to final judgment (735 ILCS 5/2—616(a) (West 1992)); and section 2—1005(g) provides that "[b]efore or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms" (735 ILCS 5/2— 1005(g) (West 1992); see also *In re Estate of Hoover* (1993), 155 Ill. 2d 402, 416, 615 N.E.2d 736 (circuit court must "permit amendment if it will further the ends of justice")). Here, five days prior to the City's filing of its motion to reconsider, the circuit court allowed the City to file affirmative defenses, including that of the statute of repose.

A circuit court's decision to allow or deny late amendments, as *Turner* exemplifies, will not be disturbed on review absent an abuse of discretion; this court has upheld the allowing of such amendments when the opposing party would not be prejudiced thereby, even regarding matters of which the pleader was aware at the time the action was filed and for which the pleader offered no acceptable reason for omitting it in the original pleading. (*Behr v. Club Med, Inc.* (1989), 190 Ill. App. 3d 396, 407, 546 N.E.2d 751; *People ex rel. Foreman v. Village of Round Lake Park* (1988), 171 Ill. App. 3d 443, 447-49, 525 N.E.2d 868.) Cases wherein prejudice has been found to exist most often involve amendments made during or immediately before trial or where it is too late for the opposing party to adequately respond to the amendment, neither of which is the case here. *People ex rel. Foreman*, 171 Ill. App. 3d at 448.

In *People ex rel. Foreman*, the court upheld the trial court's allowing the defendant leave to amend its answer to plead a statute of limitations defense even though that defense had been available from the date the action was filed, almost $4^{1}/2$ years before amendment was sought. The appellate court reasoned that at the time of the amendment the trial had not yet begun, the assertion of the limitations defense did not require further investigation by either party, and the defense, if upheld, would eliminate the necessity and expense of a trial. *People ex rel. Foreman*, 171 Ill. App. 3d at 448.

Similarly, here, the trial had not yet begun when the circuit court granted the City leave to file its affirmative defenses. Further, the City first raised the repose defense in its amended motion for summary judgment on October 27, 1993, nearly five months before trial was then scheduled to begin. In addition, that defense, if upheld, would eliminate the necessity and expense of a trial. Besides, plaintiffs make no claim that they were required to conduct any fur-

ther investigation due to the City's late assertion of that defense. Finally, while plaintiffs' expenses would have been less if the City had raised the repose defense earlier, such a factor does not rise to the level of prejudice needed to show an abuse of discretion on the part of the circuit court. (*People ex rel. Foreman*, 171 Ill. App. 3d at 448.) Consequently, we conclude that plaintiffs' waiver argument is untenable.

For the foregoing reasons, we uphold the ruling of the circuit court that plaintiffs' action is time-barred by the 14-year statute of repose contained within the construction design management and supervision section of the Code of Civil Procedure (735 ILCS 5/13—214(b) (West Supp. 1993)).

Affirmed.

HARTMAN and DiVITO, JJ., concur.