(Nos. 60027, 60038 cons.—

DOMINIC MEGA, Appellee, v. HOLY CROSS HOSPI-
TAL, Appellant.—MICHAEL M. SIEMAN, Appellee,
v. HOLY CROSS HOSPITAL, Appellant.

*Opinion filed February 6, 1986.—Rehearing
denied April 1, 1986.*

418

WARD and SIMON, JJ., took no part.
CLARK, C.J., dissenting.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Paul C. Estes and Joshua G. Vincent, of counsel), for appellant.

Carr & O'Rourke Associates, of Chicago (Donald A. Carr and Ronald P. Ernst, of counsel), for appellee.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Paul C. Estes and Joshua G. Vincent, of counsel), for appellant.

Alan D. Katz & David S. Pochis, Ltd., of Chicago (Alan D. Katz and Edward S. Reiff, of counsel), for appellee.

JUSTICE MILLER delivered the opinion of the court:

The common issue in these consolidated appeals is whether the plaintiffs' actions arising from medical treatment are barred by the four-year repose period pre-

scribed by statute for bringing such actions. Under that provision, no action concerning medical treatment may be brought against a hospital more than four years after the time of the occurrence on which the cause of action is based. (See Ill. Rev. Stat. 1983, ch. 110, par. 13—212.) The four-year repose provision went into effect on September 19, 1976; in both cases here the treatment occurred more than four years before the effective date of the new period and the actions were filed more than four years after that date.

The history of each case may be stated briefly. In cause No. 60027 the plaintiff, Dominic Mega, filed his complaint in the circuit court of Cook County on September 24, 1982. The action arose from a series of X rays administered to the plaintiff at Holy Cross Hospital for several months in 1949 for treatment of an enlarged thymus gland. The plaintiff alleged that as a result of the X-ray treatment tumors developed on his thymus gland, a condition that he discovered in March 1981. The defendant moved to dismiss the complaint as barred by the four-year period of repose, and the trial judge granted the motion. The appellate court reversed that judgment (122 Ill. App. 3d 720), and we allowed the defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)).

In cause No. 60038 the plaintiff, Michael M. Sieman, filed his action in the circuit court of Cook County on December 8, 1981. The plaintiff alleged that from 1947 through 1954 he underwent a series of X-ray treatments for tonsillitis at Holy Cross Hospital and that as a result of that treatment tumors developed on his thyroid gland, a condition that he discovered on January 8, 1980. Although Sieman's condition was discovered less than four years after the effective date of the statutory amendment imposing the four-year repose period, the action was filed more than four years after the effective date,

and therefore the defendant moved to dismiss the action as untimely; the trial judge granted the motion. The appellate court reversed that judgment (122 Ill. App. 3d 1159 (order under Supreme Court Rule 23 (87 Ill. 2d R. 23))), and we allowed the defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)). In this court the two appeals were consolidated on motion of the defendant.

When plaintiff Sieman brought his action in December 1981, section 21.1 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 22.1) provided in pertinent part:

"No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, *but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."* (Emphasis added.)

By the time plaintiff Mega commenced his action in September 1982, section 21.1 had been recodified as section 13—212 of the Code of Civil Procedure and also had been amended (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 13—212), but the two provisions were identical in all respects relevant here.

Under the general rule, in the wake of a statute shortening a limitations period or providing one where one did not exist previously, a plaintiff whose cause of action arose before that date will be allowed a reasonable period of time in which to bring his action. (*Hupp v. Gray* (1978), 73 Ill. 2d 78; *Meegan v. Village of Tinley Park* (1972), 52 Ill. 2d 354; *Trustees of Schools v. Batdorf* (1955), 6 Ill. 2d 486.) Therefore, if under the new

statute a reasonable time remains, the new period can be applied, without more; if a reasonable time would not remain, then one will be allowed. In both cases here the appellate court believed that the reasonable period to which the plaintiffs were entitled could exceed the length of the repose period itself, four years, and the causes were remanded for a determination of whether the actions were timely. Notably, in two other cases involving the four-year repose provision, the appellate court has reached the opposite conclusion. (See *Clark v. St. John's Hospital* (1984), 128 Ill. App. 3d 989; *Roberson v. Taylor* (1983), 115 Ill. App. 3d 587.) In *Clark* and *Roberson* the appellate court held that actions based on acts occurring before the four-year repose provision took effect but commenced more than four years after that date must be considered untimely, and the same result is urged here by the defendant. We agree.

In *Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, this court considered the application of the four-year repose provision to causes of actions based on acts occurring before the provision went into effect. *Moore* was a consolidation of three separate actions. In each case suit was commenced within two years of the alleged discovery of the cause of action and within the four-year period of time following September 19, 1976, the effective date of the amendment providing the four-year repose period. The causes of action were based on acts that occurred more than four years before that date, however, and therefore the amendment left no time in which the plaintiffs could commence their actions. In each case the circuit court dismissed the actions as automatically barred by the repose provision. Consistent with the general rule regarding the effect of shortened limitations periods, the court in *Moore* held that the 1976 provision would not operate as an instantaneous bar and that the plaintiffs were entitled to a reasonable period of

time, following the effective date of the provision, in which to bring their actions. Accordingly, the causes there were remanded for a determination of whether the actions had been filed within a reasonable period of time.

As in *Moore*, the acts involved here occurred more than four years before the effective date of the 1976 amendment, which left no time in which to file the actions; like the plaintiffs in *Moore*, then, the plaintiffs here were entitled to a reasonable period of time following that date in which to bring their actions. Unlike the plaintiffs in *Moore*, however, the plaintiffs here did not file their actions until more than four years after the four-year repose provision took effect. We conclude that the reasonable time to which the plaintiffs here were entitled did not extend beyond that provided by the new repose period, computed from its effective date, September 19, 1976. Therefore, the actions must be considered untimely. (See *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342.) To allow, as a reasonable time for bringing suit, a period greater than the repose period itself would defeat the purpose of the statute. For the plaintiffs here, then, the reasonable period could have ended no later than four years following the effective date of the 1976 amendment. Because the plaintiffs' actions were filed after that time, they must be considered barred.

We realize that our holding here means that plaintiff Mega's action was barred before he learned of his injury. That is the effect of the four-year period of repose provided by the 1976 amendment, however, and it will affect acts occurring after September 19, 1976, in the same way that it operates here. The period of repose gives effect to a policy different from that advanced by a period of limitations; it is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action. (See *Gates Rubber Co. v. USM Corp.*

(7th Cir. 1975), 508 F.2d 603, 611-12 (discussing the separate purposes advanced by "bifurcated" statutes of limitations).) Plaintiff Sieman raises several constitutional objections to this operation of the statute, though his own injury was discovered within four years of the effective date of the 1976 amendment. Plaintiff Mega has been affected in that way, however, and though he has not raised those objections, perhaps because of this court's decisions in *Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, and *Anderson v. Wagner* (1979), 79 Ill. 2d 295, we shall consider the problem here. Sieman argues that barring a cause of action before it is discovered violates principles of due process as well as the provisions in the Illinois Constitution ensuring the existence of a remedy for every wrong and prohibiting the impairment of contracts (Ill. Const. 1970, art. I, secs. 2, 12, 16; U.S. Const., amend. XIV).

In *Anderson* this court reviewed, for the first time, the four-year repose provision and in a comprehensive opinion held that it was constitutional. In reaching that conclusion, the court in *Anderson* recognized that the repose provision could have the effect of barring a cause of action before its discovery. (79 Ill. 2d 295, 311-12.) The constitutionality of the provision seemingly was reaffirmed in *Moore*. Without reexamining the reasoning of those decisions, we shall address one suggested constitutional basis for the discovery rule. We note that a variety of repose provisions have been found to be invalid under other States' constitutions. (See, *e.g.*, *Kenyon v. Hammer* (1984), 142 Ariz. 69, 688 P.2d 961; *Daugaard v. Baltic Cooperative Building Supply Association* (S.D. 1984), 349 N.W.2d 419.) The provision's validity depends here, however, on the Illinois Constitution, and not on the constitution of another State.

The discovery rule is not required by the "certain remedy" provision of the Illinois Constitution (Ill. Const.

1970, art. I, sec. 12). The corresponding provision in the previous constitution (see Ill. Const. 1870, art. II, sec. 19) was interpreted as "an expression of a philosophy and not a mandate that a 'certain remedy' be provided in any specific form or that the nature of the proof necessary to the award of a judgment or decree continue without modification" (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 277), and that interpretation has been given to the current provision as well (*People v. Dowery* (1975), 62 Ill. 2d 200, 207-08; see *Pierce v. Board of Education* (1977), 69 Ill. 2d 89, 92-93). Although the "certain remedy" provision has been held to prohibit the abolition by the legislature of a particular cause of action (*Heck v. Schupp* (1946), 394 Ill. 296 (holding unconstitutional a statute barring civil actions based on alienation of affections, criminal conversation, and breach of promise to marry)), it has not been held to prohibit statutes that restrict the amount or type of damages recoverable (*Siegall v. Solomon* (1960), 19 Ill. 2d 145; *Smith v. Hill* (1958), 12 Ill. 2d 588) or that require proof of wilful and wanton misconduct rather than simple negligence (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 277-78; *Clarke v. Storchak* (1943), 384 Ill. 564).

The repose provision at issue here does not have the drastic effect prohibited by *Heck*. It restricts the time within which an action must be brought, but it does not eliminate an entire category or type of action. That the repose provision may, in a particular instance, bar an action before it is discovered is an accidental rather than necessary consequence. Moreover, various circumstances may ameliorate its operation. The repose provision now is expressly subject to section 13—215 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—215), which extends the time in which to bring a cause of action if the cause has been fraudulently concealed. Also,

principles of equitable estoppel may prevent a defendant from invoking the four-year repose period as a bar. *Witherell v. Weimer* (1981), 85 Ill. 2d 146.

Notably, the "certain remedy" provision has not played a role in the development of the discovery rule in the decisions of this court. Application of the discovery rule in Illinois, a recent phenomenon, has depended primarily on "balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue" (*Rozny v. Marnul* (1969), 43 Ill. 2d 54, 70). The balance described in *Rozny*, which involved a surveyor's error, has been struck as well in other fields in determining the application of the discovery rule. (See, *e.g.*, *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 167-68 (products liability); *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 133 (defamation).) In *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 432, in a discussion of the discovery rule, the court said, "As pointed out in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, the constitutionally established policy of providing a remedy for every wrong inflicted is tempered by the policy of the statute of limitations which bars actions brought after the period of time which the legislature has determined makes the problems of proof so difficult as to pose a danger of injustice." The philosophy expressed in the "certain remedy" provision is similarly tempered by the legislature's choice of a period of repose.

As *Anderson* recounted, until 1965 the limitations period that governed all actions for medical malpractice was the two-year period for personal injuries. (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 306-07; see Ill. Rev. Stat. 1963, ch. 83, par. 15; *Mosby v. Michael Reese Hospital* (1964), 49 Ill. App. 2d 336.) In *Mosby,* an action for

medical malpractice, the appellate court refused to apply the discovery rule in conjunction with the two-year period. The cause of action there arose from the failure to remove a surgical needle following an operation on the plaintiff; the action was commenced within two years of the discovery of the needle but almost six years after the surgery. The court held that the action was barred and, in the absence of express approval by the legislature, refused to apply the discovery rule to an action for medical malpractice.

Legislative approval came a year later, in 1965, when section 21.1 of the Limitations Act (Ill. Rev. Stat. 1965, ch. 83, par. 22.1) took effect. Addressing the situation involved in *Mosby*, section 21.1 provided that in an action based on the negligent failure to remove a foreign substance, other than flesh, blood, or bone, introduced into the body in the course of treatment or operation, the period of limitations did not begin to run until the plaintiff knew or should have known of the injury; the statute also provided an outside limit of 10 years, measured from the treatment or operation, for bringing the action.

In 1970 application of the discovery rule to cases of medical malpractice was broadened considerably by this court's decision in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32. The basis for the cause of action there was the failure to diagnose a malignant tumor; the action was filed more than three years after the misdiagnosis but within less than a year of the plaintiff's discovery of the mistake. The court held that the action was not barred by the two-year period for bringing actions for personal injuries (see Ill. Rev. Stat. 1969, ch. 83, par. 15). Rather, the court held that "in medical malpractice cases as this, the cause of action accrues when the person injured learns of his injury or should reasonably have learned of it." (46 Ill. 2d 32, 40.) The court did not believe that by enacting section 21.1 the legislature had

intended to limit application of the discovery rule, in the area of medical malpractice, to the narrow category of cases falling within the scope of that statute. The court considered that application of the discovery rule was appropriate in the absence of the expression of a contrary intent by the legislature. 46 Ill. 2d 32, 39.

There matters stood until 1975, when section 21.1 was amended to provide that an action for medical malpractice could be brought within two years of its discovery but not later than five years of the occurrence; the provision in that section regarding foreign substances was left intact (see Ill. Rev. Stat. 1975, ch. 83, par. 22.1). Thus, the legislature codified the rule in *Lipsey* but restricted its operation by imposing a five-year period of repose. These amendments were part of an attempt by the legislature to address the crisis in medical malpractice. Certain aspects of that program later were declared unconstitutional in *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313; the amendments to section 21.1 were not at issue there.

Section 21.1 was amended again in 1976. The legislature shortened the repose period to four years and deleted the separate provision regarding foreign substances (see Ill. Rev. Stat., 1976 Supp., ch. 83, par. 22.1). The four-year repose provision has been a part of the statute since that time. In later amendments, the statute was expressly made subject to the separate provision regarding fraudulent concealment, and dentists and registered nurses were added to its scope. See Ill. Rev. Stat. 1983, ch. 110, par. 13—212; Ill. Rev. Stat., 1982 Supp., ch. 110, par. 13—212; Ill. Rev. Stat. 1981, ch. 83, par. 22.1.

In Illinois, then, the history of the discovery rule in the area of medical malpractice has been directed and shaped largely by the legislature. A repose period of one length or another has always limited application of the

discovery rule in cases involving foreign objects, from its initial application in 1965. The discovery rule was not applied to other forms of medical malpractice until 1970, and in those cases was without restriction only until 1975, when a five-year repose period was added to section 21.1; the next year that was shortened to four years. The repose periods reflect the legislature's balancing of an individual's interest in recovery against the problems and costs perceived in medical malpractice actions and the public's interest in having available to it affordable health care (see *Anderson v. Wagner* (1979), 79 Ill. 2d 295; *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313).

The discovery rule may be applied by the court in the absence of the expression of a contrary intent by the legislature. (*Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32; *Mosby v. Michael Reese Hospital* (1964), 49 Ill. App. 2d 336.) That a contrary intent has been expressed here is apparent in the repose period itself. A later contrary intent was implicit in the amendment expressly providing an exception to the repose period in cases involving fraudulent concealment of the cause of the action; general application of the discovery rule would render the exception meaningless (see *Gates Rubber Co. v. USM Corp.* (7th Cir. 1975), 508 F.2d 603, 612). Our limited role in these circumstances was noted and defined in *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 201, where the court said:

> "It should be emphasized that it is not the province of this court to pass on the wisdom or desirability of legislation. (*Garcia v. Tully* (1978), 72 Ill. 2d 1, 10.) As long as the means chosen by the legislature to achieve a desired end are lawful and inoffensive to the State and Federal constitutions, our inquiry may proceed no further."

Having determined that the repose provision is constitutional (see *Moore v. Jackson Park Hospital* (1983), 95 Ill.

2d 223; *Anderson v. Wagner* (1979), 79 Ill. 2d 295), we conclude that the plaintiffs' actions were barred by the period of repose.

For the reasons stated, we reverse the judgments of the appellate court and affirm the judgments of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*

WARD and SIMON, JJ., took no part in the consideration or decision of this case.

CHIEF JUSTICE CLARK, dissenting:

I cannot agree with the majority in this case because I believe the result reached is unjust and violative of the Constitution of the State of Illinois.

As the majority states, plaintiff Sieman argued that barring his cause of action before he was aware of its existence violated section 12 of article I of the Illinois Constitution. (111 Ill. 2d at 423.) Section 12 provides:

> "Every person *shall* find a certain remedy in the laws for *all* injuries and wrongs which he receives to his person, privacy, property or reputation. He *shall* obtain justice by law, freely, completely, and promptly." (Emphasis added.) Ill. Const. 1970, art. I, sec. 12.

In response to plaintiff Sieman's argument, the majority cites *Anderson v. Wagner* (1979), 79 Ill. 2d 295, and *Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, and states that these two opinions held the amendment to the statute of limitations to be constitutional. (111 Ill. 2d at 423, 428-29.) It is clear, however, that *Anderson* did not specifically address the issue raised by plaintiff Sieman. In *Anderson,* this court stated:

> "The plaintiffs also contend, in an unarticulated due process argument, that under section 21.1 it is possible that a person's cause of action may be barred by the 4-year-maximum time limit before he learns of his injury.

*This problem is not directly involved in these cases.*" (Emphasis added.) 79 Ill. 2d 295, 311.

Then, in *dicta,* in *Anderson,* this court discussed the fact that the 4-year limitation had been enacted in response to the medical malpractice crisis and therefore "the reasonableness of the statute must be judged in light of the circumstances confronting the legislature and the end which it sought to accomplish." (79 Ill. 2d 295, 312.) In *Anderson,* the plaintiffs were not instantaneously barred, and therefore the specific issue raised by plaintiff Sieman was not addressed.

Then, in *Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, this court addressed this argument and held that the plaintiffs in those consolidated cases could not be precluded from bringing their causes of action since the amendment to the statute of limitations instantaneously barred them from bringing their suits. In *Moore,* we stated:

"So, while the Illinois legislature's response to the medical malpractice crisis may effectively limit the time in which *future plaintiffs (plaintiffs whose injuries occur after the effective date of the 1976 amendment)* can bring an action, we will not read into the statute a retroactive application so as to instantaneously extinguish a cause of action that existed prior to the amendment." (Emphasis added.) 95 Ill. 2d 223, 237.

The majority states that "[t]he constitutionality of the provision seemingly was reaffirmed in *Moore.*" (111 Ill. 2d at 423.) This is true only to the extent that the statute applies to plaintiffs injured *after* the effective date of the amendment.

In *Moore,* the court further stated:

"In 1976, the Illinois legislature did not clearly indicate its intention as to the applicability of the 1976 amendment. Since there is no express language as to retroactive application, we must give section 21.1 a prospective construction. This is the only equitable and rational solu-

tion to the dilemma the plaintiffs in these cases face." (95 Ill. 2d 223, 235-36.)

Therefore, *Moore* does not hold that the repose provision as applied to plaintiffs like those in *Moore*, or the plaintiffs herein, is constitutional. *Moore* also does not hold that a plaintiff who was injured prior to the effective date of the amendment and who does not bring suit until four years after the effective date is barred from bringing suit. In *Moore*, we held that the plaintiffs therein should have been allowed a reasonable time after the effective date of the amendment to bring *their* suits for their already discovered injuries. While it is true that the plaintiffs in *Moore* had filed their suits within the four years after the effective date of the amendment, we did not decide that plaintiffs such as Sieman and Mega would be forever barred if they did not bring suit within four years after the effective date of the amendment. The majority states that to allow a period greater than four years after the effective date would defeat the purpose of the statute. (111 Ill. 2d at 422.) But this is not true as to those plaintiffs injured after the effective date of the amendment. While the medical malpractice crisis might have made it reasonable to enact such a statute, it is not reasonable to apply it to these plaintiffs.

To interpret *Moore* for the broad statements that the majority suggests is error. *Moore* stands for the proposition that plaintiffs who were injured prior to the effective date of the amendment and who could have brought suit cannot now be instantaneously barred from seeking redress for their undiscoverable injuries. Locking the courtroom door on this group of plaintiffs before they could even have discovered their injuries or availed themselves of the judicial process is unconstitutional in Illinois. The majority states that this amendment "restricts the time within which an action must be brought, but it does not eliminate an entire category or type of

action." (111 Ill. 2d at 424.) This is not true. The entire category of plaintiffs who were injured prior to September 19, 1976, but did not bring suit within four years after that date is eliminated.

In *Daugaard v. Baltic Cooperative Building Supply Association* (S.D. 1984), 349 N.W. 2d 419, a case cited by the majority (111 Ill. 2d at 423) and decided by the Supreme Court of South Dakota, two underground liquified propane gas lines were installed at the site of a grain elevator. The installation failed to incorporate an anticorrosion system, and on May 28, 1980, a fire began and an explosion occurred. A number of individuals were seriously injured, and at least one of the injured died. An investigation revealed that the pipes installed in 1970 had corroded. The corrosion allowed the propane to leak into the basement of the elevator, causing an accumulation of the propane gas which led to the explosion.

Two South Dakota statutes set forth time limits which precluded the plaintiffs from recovering. The statutes provided:

"No action to recover damages for any injury to real or personal property, for personal injury or death arising out of any deficiency in the design, planning, supervision, inspection and observation of construction, or construction, of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, may be brought against any person performing or furnishing the design, planning, supervision, inspection and observation of construction, or construction, of such an improvement *more than six years after substantial completion of such construction.* Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or his representative can occupy or use the improvement for the use it was intended." (Emphasis added.) S.D. Codified Laws Ann. sec. 15—2—9 (1984).

"In the application of any statute of limitations to a

cause of action against a manufacturer, lessor or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, inspection, preparation, assembly, testing, packaging, labeling, or sale of any product or failure to warn or protect against a danger or hazard in the use, misuse or unintended use of any product, or the failure to provide proper instructions for the use of any product, *the cause of action shall be barred if it accrues more than six years after the date of the delivery of the completed product to its first purchaser or lessee who was not engaged in the business of selling such product, regardless of the date the defect in the product was or should have been discovered.* This section shall not apply to causes of action which have arisen prior to July 1, 1978." (Emphasis added.) S.D. Codified Laws Ann. sec. 15—2—12.1 (1984).

Article VI, section 20, of the South Dakota Constitution provided: "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." S.D. Const., art. VI, sec. 20.

Even though these South Dakota statutes had specified prospective application, the court declared them unconstitutional because it held that the State courts had to be open to the injured and the oppressed. The court stated that the two statutes were "a locked deadbolt and shackle on our courtroom doors" (*Daugaard v. Baltic Cooperative Building Supply Association* (S.D. 1984), 349 N.W.2d 419, 425) and concluded that they were *"statutes of nullification which stamp out our citizens' causes of action before they accrue."* (Emphasis added.) (349 N.W.2d 419, 425.) The *Daugaard* court held that the two statutes were "violative of, and repugnant to, constitutional provisions insuring the citizenry of open

courts." 349 N.W.2d 419, 427.

There may be some that would argue that the *Daugaard* case is distinguishable because, in *Daugaard,* the court held that even though the statute was to be applied prospectively it unconstitutionally barred causes of action before the plaintiffs could have discovered their injuries. We have not gone that far in Illinois, but I believe the reasoning used in that opinion is helpful in understanding the dilemma of the plaintiffs in the instant cases.

The United States Supreme Court has held:

"What the Constitution does require is 'an *opportunity* [to be heard,] \*\*\* granted at a meaningful time and in a meaningful manner.' " (Emphasis added.) (*Boddie v. Connecticut* (1971), 401 U.S. 371, 378, 28 L. Ed. 2d 113, 119, 91 S. Ct. 780, 786.)

The Illinois Constitution is the basis upon which all of our State laws *must* be premised. Like the South Dakota Constitution, our constitution clearly directs that the courts of this State shall be open to the injured. "A statute could not bar *the existing rights of claimants* without affording this opportunity; if it should attempt to do so, it would *not* be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions." (Emphasis added.) *Wilson v. Iseminger* (1902), 185 U.S. 55, 62, 46 L. Ed. 804, 807, 22 S. Ct. 573, 575.

Statutes of limitation proceed on the premise that an injured party has a full opportunity to try his rights in the courts within certain time limits. (*Daugaard v. Baltic Cooperative Building Supply Association* (S.D. 1984), 349 N.W.2d 419, 425.) The majority quotes language from *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418. In *Williams,* this court quoted from *Rozny v. Marnul* (1969), 43 Ill. 2d 54, wherein it is stated that the "constitutionally established policy of

providing a remedy for every wrong inflicted is *tempered* by the policy of the statute of limitations which bars actions brought after the period of time which the legislature has determined makes the problems of proof so difficult as to pose a danger of injustice." (Emphasis added.) (45 Ill. 2d 418, 432.) When a statute of limitations like the instant one is applied to people injured before its effective date, it does not "temper" the certain-remedy provision, it makes it illusory. The statute in the instant case bars all recovery to these plaintiffs without allowing them a reasonable time for the commencement of an action. As we stated in *Moore,* these plaintiffs, who were injured prior to the effective date of the amendment, are the victims of an "unusual statutory dilemma." They had rights which were instantaneously extinguished upon the effective date of the amendment.

In conclusion, I believe the majority has reached the wrong result in this case and has incorrectly interpreted *Moore.* It is unconstitutional to preclude these plaintiffs who were injured prior to September 19, 1976, from bringing suit. There is not a "certain remedy in the laws" for them, and they cannot "obtain justice by law, freely, completely, and promptly." Therefore, I respectfully dissent. ·