2015 IL App (1st) 142239

FIRST DIVISION
AUGUST 31, 2015

No. 1-14-2239

| | | |
|---|---|---|
| CHARLES MOSIER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 L 12428 |
| | ) | |
| THOMAS MOLITOR, | ) | Honorable |
| | ) | Eileen M. Brewer, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1     The circuit court of Cook County dismissed the attorney malpractice complaint filed by the plaintiff-appellant, Charles Mosier (Charles) as time-barred by section 13-214.3(d) of the Code of Civil Procedure (735 ILCS 5/13-214.3(d) (West 1994))[1] (Code), as that provision has been construed by our supreme court in *Wackrow v. Niemi*, 231 Ill. 2d 418 (2008). On appeal, Charles argues that different statutory subsections govern his action, and that his complaint was timely filed pursuant to sections 13-214.3(b) and (c) of the Code.  735 ILCS 5/13-214.3(b), (c)

---

[1]As explained by our supreme court in a 2008 opinion: "Public Act 89-7, eff. March 9, 1995, partially amended section 13-214.3 by repealing subsection (d). However, the public act was held unconstitutional in its entirety by this court in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). To date, the General Assembly has not addressed our holding in *Best* with regard to section 13-214.3. The text of that section therefore remains in its form prior to our decision in *Best.*" *Wackrow v. Niemi*, 231 Ill. 2d 418, 423 n.3 (2008). However, the General Assembly has since reinstated section 13-214.3(d). See Pub. Act 98-1077, § 5 (eff. Jan. 1, 2015) (amending 735 ILCS 5/13-214.3 (West 2012)).

(West 1994). For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3     This action arises out of estate planning legal services rendered by defendant-appellee Thomas Molitor (Molitor) to Charles' deceased aunt, Mary M. Corrado (Mary), and a subsequent property dispute between two of Mary's nephews, Charles and Thomas Mierkiewicz (Thomas).

¶ 4     On June 8, 1990, Mary (through an attorney other than Molitor) settled a trust (the 1990 trust) and, at the same time, conveyed real estate located at 1530 Seward Street, Evanston, Illinois (the Evanston property) to the 1990 trust. The 1990 trust assigned the Evanston property to Mary's niece, Diane Carlson (Diane), if she survived Mary, and otherwise, to Diane's living descendants. The 1990 trust also assigned 10% of the trust residue to Charles.

¶ 5     On March 15, 1993, Mary amended the 1990 trust with the assistance of another attorney, John Shephard (Shephard). This amendment stated that if the Evanston property was an asset of the trust at the time of Mary's death, it was to be sold and the proceeds added to the principal of the trust estate. Mary also adjusted the distribution of her estate such that 28% would go to her surviving sisters (Genevieve, Lena and Josephine), another 18% of the trust residue would be divided between Lena's two children (including Charles), and another 45% would be distributed in equal shares to Josephine's five children, which included Thomas.

¶ 6     On May 18, 1993, Mary amended the 1990 trust a second time, adjusting the distribution of the residue of her trust estate to give Charles and Thomas, each a 20% share. On June 16, 1997, a third amendment to the 1990 trust again adjusted the distribution to give a 20% share of the trust residue to Charles and 40% of the trust residue to Thomas.

¶ 7    On October 13, 1997, Mary amended the 1990 trust a fourth and final time.    That amendment adjusted the distribution of the trust to give Thomas 45% of the residue of the trust, but provided none to Charles.  The second, third and fourth amendments to the 1990 trust were drafted by the law firm of Cleveland and Bernstein.[2]

¶ 8    Although the precise date is not evident from the appellate record, Mary subsequently retained attorney Molitor to prepare a living trust for her, which was executed on October 22, 2001 (the 2001 trust).  According to Charles' complaint in the underlying case, Mary expressed to Molitor, her intent "that Charles should be her sole beneficiary and that he should be the owner of the [Evanston property] at the time of her death."

¶ 9    The 2001 trust drafted by Molitor named Charles as the sole successor trustee upon Mary's death and provided that all residue and remainder of the trust estate would be distributed to Charles.  The residue of the 2001 trust was to include all accumulated income and principal of the 2001 trust and all other real or personal property, including cash, stocks, bonds, mutual funds, I.R.A. accounts, life insurance policies and other items.  However, the 2001 trust did not list the Evanston property as an asset of the 2001 trust, and also did not reference the 1990 trust or any of its amendments.  According to Charles, in drafting the 2001 trust, Molitor failed to inquire how title was held in the Evanston property and thus "never effectuated the transfer of title to the [Evanston property] into the 2001 trust."  Molitor claims that he did not perform any legal services for Mary after early 2002.

¶ 10    On December 21, 2006, Mary passed away.  At that time, Charles assumed that he was the owner of the Evanston property.  Charles claims that since Mary's death, he physically

---

[2]According to this court's September 2011 Rule 23 order in the prior lawsuit between Charles and Thomas, Mary also executed a separate trust in March 2001 that provided that Charles would receive 60% of the residue of the trust. *Mary M. Corrado Trust v. Mosier*, 2011 IL App (1st) 101105-U, ¶ 8.  However, that trust is not included in the record for this appeal.

possessed and maintained the Evanston property, including paying for its upkeep, insurance, and real estate taxes.

¶ 11    On December 5, 2007, Thomas filed a complaint in the circuit court of Cook County alleging that Charles wrongfully possessed the Evanston property and sought Charles' eviction from the Evanston property.    Thomas amended his complaint on February 7, 2008, to additionally request a declaratory judgment that the 2001 trust and the 1990 trust were two separate trusts and that title to the Evanston property was held by the 1990 trust.  In March 2010, the trial court conducted a bench trial and heard the testimony of Charles, Thomas, Molitor and other witnesses.  On March 19, 2010, the trial court entered a declaratory judgment in favor of Charles, finding that it was Mary's intent to leave the Evanston property to Charles.  The trial court held that the 2001 trust had "effectively revoked all prior trusts" and that the Evanston property "shall be deemed the property of that [2001] trust" and thus Charles was entitled to possess the property.

¶ 12    Thomas appealed to this court.  On September 27, 2011, this court issued an order reversing the trial court's judgment in favor of Charles and remanding for further proceedings. See *Mary M. Corrado Trust v. Mosier*, 2011 IL App (1st) 101105-U.  In that order, we emphasized that the 1990 trust and the 2001 trust were completely separate instruments and that Mary never deeded the Evanston property to Charles in the 2001 trust or otherwise "took any legal action to move the Evanston property out of the 1990 Trust." *Id.* ¶ 30.  Therefore, our court concluded that the 2001 trust "had no effect on the Evanston property which was contained in the 1990 Trust." *Id.*  We noted that although the extrinsic evidence considered by the trial court suggested that Mary may have, in fact, intended to leave the Evanston property to Charles, we were "constrained" by the explicit language of the trust documents. *Id.*  We thus remanded "for

further proceedings in accordance with the directives set forth in the 1990 Trust" and its amendments. *Id.* ¶ 34. On November 21, 2011, the clerk of our appellate court issued its mandate attaching our September 27, 2011 order.

¶ 13    Upon remand, on March 13, 2012, the trial court entered a judgment declaring that Thomas, as trustee of the 1990 trust, held "sole title" to the Evanston property and ordered Charles to turn over possession of the property.

¶ 14    On June 14, 2012, Charles filed a legal malpractice complaint against Molitor. Charles alleged that, as a result of Molitor's failure to convey the Evanston property into the 2001 trust when Molitor prepared the 2001 trust for Mary, Charles was now wrongfully dispossessed of the Evanston property, contrary to Mary's wishes. On December 20, 2012, Molitor filed an answer with affirmative defenses, including the defense that Charles' action was "barred by the applicable statutes of limitations." Charles served discovery requests on Molitor in January 2013, and the parties appeared before the court several times over the following several months, during which the court granted Molitor a number of extensions to respond to outstanding discovery.

¶ 15    At a case management conference on October 9, 2013, the trial court granted Molitor leave to file a motion to dismiss based on the statute of limitations, by October 30, 2013. Molitor apparently did not do so. On December 5, 2013, Charles filed a motion to bar Molitor's affirmative defenses, due to Molitor's failure to file a motion to dismiss within the time period previously ordered by the court.

¶ 16    On December 9, 2013,[3] while Charles' motion to bar affirmative defenses was pending, the trial court entered an order reflecting that Molitor had filed a motion to dismiss pursuant to

---

[3]The parties' subsequent submissions to the trial court suggest that Charles' counsel

section 2-619 of the Code. 735 ILCS 5/2-619 (West 2012). The court's order set a January 31, 2014 hearing date for the motion to dismiss. Inexplicably, however, Molitor's actual motion and any memorandum of law in support of his motion to dismiss are not included in the record on appeal.

¶ 17    On December 13, 2013, the trial court entered a briefing schedule on Charles' motion to bar Molitor's affirmative defenses, ordering Molitor to respond by December 20, 2013 and for Charles to reply by January 10, 2014. The record on appeal likewise, does not contain Molitor's response to Charles' motion to bar his affirmative defenses. However, the record does include Charles' January 10, 2014, reply to Molitor's response to Charles' motion to bar Molitor's affirmative defenses. Charles' reply reflects that Molitor did in fact submit a response to Charles' motion to bar the affirmative defenses by Molitor. In his response, Molitor apparently asserted that he had filed his motion to dismiss in a timely manner. According to Charles' reply, Charles did not receive Molitor's brief in support of his motion to dismiss until January 3, 2014.

¶ 18    On January 23, 2014, the court set the motion to bar affirmative defenses for hearing on February 21, 2014. However, the record on appeal does not contain any record of the proceedings on February 21, 2014, and does not contain the order issued following the hearing on the motion to bar affirmative defenses.

¶ 19    Charles submitted his response to Molitor's motion to dismiss on March 21, 2014. In that submission, Charles argued that his lawsuit was timely under section 13-214.3(b) of the Code, which provides that a legal malpractice action must be commenced within two years from the time the plaintiff "knew or reasonably should have known of the injury for which damages are

_____

appeared in court on December 9, 2013 from 9:00 to 9:15 a.m., but that Molitor did not appear before the court to present his motion to dismiss until approximately 9:45 a.m., after Charles' counsel had left.

sought." 735 ILCS 5/13-214.3(b) (West 1994). Charles argued that the triggering event for the statute of limitations to run was the issuance of the appellate court's mandate on November 21, 2011, because it was not until that date that he "learned that he might lose his interest in the [Evanston] Property." Charles thus argued that his June 2012 complaint was timely under section 13-214.3(b)'s two-year limitations period.

¶ 20    Charles additionally argued that his complaint was not time-barred by the six-year statute of repose under section 13-214.3(c), which provides that a legal malpractice action "described in subsection (b) may not be commenced in any event more than 6 years after the date on which the [attorney's] act or omission occurred." 735 ILCS 5/13-214.3(c) (West 1994). Charles asserted that the governing date under this provision was the death of Mary on December 21, 2006, because Molitor "could have corrected his error in [Mary's] estate planning at any point before" her death. Therefore, Charles argued that he had six years from that date, until December 21, 2012, to file his complaint under section 13-214.3(c) of the Code. Since Charles filed his complaint on June 14, 2012, he argued that it was timely under both section 13-214.3(b) and section 13-214.3(c) of the Code. Notably, however, Charles' brief in response to Molitor's motion to dismiss did not address section 13-214.3(d) of the Code, which states that "[w]hen the injury caused by [an attorney's] act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced within 2 years after the date of the person's death ***." 735 ILCS 5/13-214.3(d) (West 1994). The trial court granted Molitor the right to reply to Charles' opposition to Molitor's motion to dismiss by April 11, 2014. The record on appeal does not contain Molitor's reply.

¶ 21    The record reflects that Molitor's motion to dismiss was heard by the court on May 6, 2014. However, the court did not decide the motion on that date, but instead entered an order requiring the parties to file supplemental briefs regarding section 13-214.3(d) of the Code.

¶ 22    No transcript or record of the May 6, 2014 proceedings is contained in the record on appeal. However, Charles' supplemental brief, filed on June 4, 2014, reflects that the court asked the parties to brief the applicability of section 13-214.3(d) in light of the Illinois Supreme Court's decision in *Wackrow v. Niemi*, 231 Ill. 2d 418 (2008), which held that when a decedent's attorney failed to deed property to an intended beneficiary as intended by the decedent, section 13-214.3(d) applied to limit the beneficiary's time to file a malpractice suit against the attorney.

¶ 23    Charles argued in his supplemental brief that neither *Wackrow* nor section 13-214.3(d) applied to the case at hand, "because [Charles'] injury did not occur until several years after [Mary's] death." Charles instead urged that the applicable limitation provision was section 13-214.3(b) of the Code, which provides that an action "must be commenced within 2 years from the time the [plaintiff] *** knew *** of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 1994). Charles contended in his supplemental brief that his legal injury did not occur when Mary died in 2006, but that his injury occurred, and the statute of limitations began to run, only when the trial court (upon remand from this court's September 2011 order) entered its judgment in March 2012 ordering him to give up possession of the Evanston property. Charles urged that the "two-year statute of limitation did not begin to run until [Charles] actually learned of his injury, which was in March of 2012, when the trial court judge enforced the appellate court mandate." Since Charles filed his legal malpractice complaint on June 14, 2012, he argued that his action was not barred by the applicable statute of limitations.

1-14-2239

¶ 24    The record on appeal does not contain any supplemental brief filed by Molitor in response to the court's May 6, 2014 request for briefing on the application of section 13-214.3(d).

¶ 25    On July 15, 2014, the trial court granted Molitor's motion to dismiss on the basis that the complaint was time-barred pursuant to section 13-214.3(d) of the Code. Citing *Wackrow*, the trial court held that under section 13-214.3(d), the "applica[ble] statute of limitation began to run on the date of death of [Mary]" on December 21, 2006, and that the limitation period expired two years later, on December 21, 2008. As Charles did not file his malpractice complaint until June 14, 2012, the trial court concluded that the action was time-barred.

¶ 26    On July 22, 2014, Charles filed a notice of appeal from the order of dismissal.

¶ 27                                        ANALYSIS

¶ 28    We first note that we have appellate jurisdiction, as Charles filed a timely notice of appeal from the July 15, 2014 order dismissing his complaint with prejudice. See Ill. S. Ct. R. 303(a) (eff. May 30, 2008).

¶ 29    The sole question at issue in this appeal is whether the trial court erred in granting Molitor's motion to dismiss Charles' complaint as untimely. An involuntary dismissal is allowed under the Code when the action "was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2012). The standard of review by this court of a section 2-619 dismissal is *de novo*. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). Similarly, questions of statutory interpretation are also subject to *de novo* review. *McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565, 577 (2009).

- 9 -

¶ 30    This appeal depends upon the construction of section 13-214.3 of the Code, which limits the time in which an action may be brought against an attorney for legal malpractice.    The relevant provisions of that statute state:

>    "(b) An action for damages based on tort, contract, or otherwise *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.
>
>    (c) Except as provided in subsection (d), an action described in subsection (b) may not be commenced in *any event* more than 6 years after the date on which the act or omission occurred.
>
>    (d) When the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced *within 2 years* after the date of the person's death unless letters of office are issued or the person's will is admitted to probate within that 2 year period, in which case the action must be commenced within the time for filing claims against the estate or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975."    (Emphasis added.)    735 ILCS 5/13-214.3(b), (c), (d) (West 1994).

¶ 31 The parties' appellate briefs dispute which subsection of section 13-214.3 governs in this case. Charles relies primarily on section 13-214.3(b), which sets a two-year limitation period running from "the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 1994). Charles argues that he suffered no actual damages until the trial court in Thomas' action against Charles ordered that Charles vacate the Evanston property on March 13, 2012; thus he argues that the two-year statute of limitations did not begin to run until that date. Since Charles filed his malpractice cause of action against Molitor on June 14, 2012, he argues that the two-year statute of limitations had yet to run. Charles relies on the principle that when harm is only speculative, no cause of action for legal malpractice exists. See *Lucey v. Law Offices of Pretzel & Stouffer, Chartered,* 301 Ill. App. 3d 349, 353 (1998). Charles likewise cites our supreme court's holding that, "[f]or purposes of a legal malpractice action, a client is not considered to be injured unless and until he has suffered a loss for which he may seek monetary damages." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). Charles asserts that he did not lose anything of value until he was evicted from the Evanston property in March 2012, and thus claims he could not have brought his action against Molitor prior to that time.

¶ 32 Charles' appellate argument also acknowledges that attorney malpractice actions governed by the two-year limitations period in section 13-214.3(b) are additionally subject to the six-year statute of repose in section 13-214.3(c), which provides that "an action described in subsection (b) may not be commenced *** more than 6 years after the date on which the [attorney's] act or omission occurred." 735 ILCS 5/13-214.3(c) (West 1994). However, Charles argues that the six-year statute of repose did not begin to run until the day of Mary's death on

December 21, 2006, because Molitor could have corrected his negligence in preparing the 2001 trust at any time until Mary's death. Charles relies on our decision in *Koczor v. Melnyk,* 407 Ill. App. 3d 994, 999 (2011), a legal malpractice case premised upon an attorney's failure to record his clients' deed following their purchase of real estate, which held that the six-year statute of repose under section 13-214.3(c) began to run on the last day that the deed to the property could have been timely recorded. *Id.* Charles thus argues that the statute of repose under section 13-214.3(c) would not have expired until December 21, 2012, six years after Mary's death, such that his June 2012 complaint was also timely under that provision.

¶ 33    Molitor, on the other hand, argues that this case is governed by section 13-214.3(d), as construed by our supreme court in *Wackrow v. Niemi*, 231 Ill. 2d 418 (2008). *Wackrow*'s facts are similar to the case at hand. In *Wackrow,* the defendant attorney had drafted a trust for the plaintiff's brother (Woods) in March 1993. *Id.* at 420. This trust was amended on April 15, 2002, to include certain real estate in Westmont, Illinois to be given to the plaintiff upon Woods' death (or $300,000 if the property were sold before Woods' death). *Id.* However, the defendant attorney allegedly failed to discover "that the actual owner of the property was a land trust in which Woods had the sole beneficial interest, and not Woods individually." *Id.* at 425. After Woods died on August 2002, letters of office were issued and his will was admitted to probate in October 2002. *Id.* The plaintiff filed a claim against Woods' estate in April 2003, but the probate court denied the plaintiff's claim against the estate for the Westmont property in October 2003. *Id.* at 421. On December 27, 2004, the plaintiff filed an attorney malpractice claim, "alleging that defendant failed to exercise reasonable care in creating the trust amendment, because a sufficient title search would have revealed that the actual owner of the property was not Woods individually, but another trust." *Id.* The defendant filed a motion to dismiss, arguing

that the complaint was not timely under section 13-214.3(d) "because the complaint was not brought within the time for filing claims against the estate or contesting the will." *Id.* The motion to dismiss was granted by the trial court and affirmed by the appellate court. *Id.* at 421-22. Our supreme court agreed that under section 13-214.3(d) the claim was time-barred. *Id.* at 428-29 ("Because letters of office were issued and Woods' will was admitted to probate *** plaintiff was required to file her complaint within the time for filing claims against the estate or the time for filing a petition contesting the validity of the will.").

¶ 34 In its analysis, our supreme court noted that in a prior decision, it had held that section 13-214.3(d) applies "to all cases when the alleged injury caused by the attorney's act or omission does not occur until the death of the person for whom the professional services were rendered," and that "under the statute, a plaintiff has two years to file a claim unless letters of office are issued or the will is admitted to probate." (Internal quotation marks omitted.) *Id.* at 423-24 (citing *Petersen v. Wallach*, 198 Ill. 2d 439, 445 (2002)).

¶ 35 As applied to *Wackrow*'s facts, our supreme court reasoned: "[I]t is clear that the injury in this case did not occur until the death of Woods. Plaintiff alleges legal malpractice in the drafting of the amendment to Woods' trust. Because Woods could have revoked that amendment or changed the beneficiary prior to his death, the injury did not occur until Woods' death. Consequently, section 13-214.3(d) applies to plaintiff's claim." *Id.* at 425.

¶ 36 Notably, the *Wackrow* plaintiff "denie[d] that the injury caused by defendant's legal malpractice occurred upon the death of Woods" and thus argued that section 13-214.3(d) did not apply, instead claiming that her injury "occurred when the administrator of Woods' estate denied her claim." *Id.* Our supreme court rejected that argument, reasoning: "section 13-214.3(d) applies to plaintiff's claim because the injury caused by defendant's legal malpractice did not

occur until the death of Woods. Section 13-214.3(d) looks to 'the death of the *person* for whom the professional services were rendered.' [Citation.] Woods was the *person* for whom the professional services were rendered." (Emphases in original.) *Id.* at 425-26.

¶ 37    The supreme court's analysis in *Wackrow* proceeded to refer to section 13-214.3(d) as a "repose provision" and explained: "A 'period of repose gives effect to a policy different from that advanced by a period of limitations; it is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action.' " *Id.* at 426 (quoting *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 422 (1986)).

¶ 38    The court further elaborated on the relationship between subsections (b), (c) and (d) of section 13-214.3, explaining that section 13-214.3(d) "create[s] an exception to the six-year repose period for attorney malpractice actions where the alleged injury does not occur until the death of the person for whom professional services were rendered. However, that exception is not *in addition to* the two-year statute of limitations [in subsection (b)] and the six-year statute of repose [in subsection (c)]. Rather, the exception applies *instead of* the two-year statute of limitations and the six-year statute of repose." (Emphases in original.) *Id.* at 427. The *Wackrow* court "recognize[d] that the effect of the section 13-214.3(d) exception may shorten the limitation period for legal malpractice complaints and may mean that a plaintiff's action is barred before she learns of her injury." *Id.*

¶ 39    In this appeal, Charles argues that *Wackrow* is distinguishable and inapplicable to the case at hand. Charles suggests that, because the plaintiff in *Wackrow* never had possession of the property in question, the plaintiff in that case suffered actual injury at the time of Woods' death, when she learned that she did not have title to the property. Charles argues that, in contrast, he was already in possession of the Evanston property and did not lose possession at the time of

Mary's death; thus he argues that he was not injured at Mary's death and therefore section 13-214.3(d) does not apply to this case. Instead, Charles argues that because he was in possession of the Evanston property until he was ordered to give up possession in March 2012, his injury did not occur until that time.

¶ 40    Molitor's appellate argument contends that section 13-214.3(d) nevertheless applies, noting that a "statute of repose begins to run when a specific event occurs, regardless of whether an action has accrued" and regardless of an actual injury to the plaintiff. Molitor relies on *Wackrow*'s holding that section 13-214.3(d) "looks to 'the death of the *person* for whom the professional services were rendered' " in determining when the two-year period of repose under that subsection begins to run. (Emphasis in original.) *Id.* at 425 (quoting 735 ILCS 5/13-214.3(d) (West 1994)). Molitor thus argues that the period of repose under section 13-214.3(d) began to run upon Mary's death on December 21, 2006 and expired on December 21, 2008. Molitor emphasizes *Wackrow*'s holding that section 13-214.3(d) is not *in addition to* the two-year statute of limitation in section 13-214.3(b) or the six-year statute of repose in section 13-214.3(c), but rather applies *instead of* those provisions. *Id*. at 427.

¶ 41    In granting Molitor's motion to dismiss, the trial court relied on *Wackrow* and concluded that section 13-214.3(d) applied to bar Charles' action. Specifically, the trial court determined that the period in which Charles could have filed his malpractice complaint began to run on the date of Mary's death, December 21, 2006 and expired on December 21, 2008.[4] *Id.*

---

    [4]Under section 13-214.3(d), a plaintiff has two years from the decedent's death to file a claim, unless letters of office are issued or the will is admitted to probate, in which case the claim must be filed within the time for filing claims against the estate or within the time to contest the will. See *Petersen v. Wallach*, 198 Ill. 2d 439, 445-46 (2002). In this case there is no indication in the record that letters of office were ever issued or that Mary's will was admitted to probate. Therefore, for purposes of section 13-214.3(d), the relevant period of repose runs for two years from the date of Mary's death.

¶ 42    We agree with Molitor and the trial court that section 13-214.3(d), as construed by *Wackrow*, controls in this situation and bars Charles' claim.  The facts of this case are analogous to those of *Wackrow*.  In both cases, the alleged legal malpractice was the failure of the deceased client's attorney to cause the transfer of real property into the decedent's trust for the benefit of the plaintiff, resulting in the plaintiff's failure to receive title to the property which he otherwise would have received upon the decedent's death.  Further, just as the *Wackrow* plaintiff urged that section 13-214.3(d) did not apply because she was not injured at the time of Woods' death but instead suffered injury when Woods' estate denied her claim to the property, Charles in this case likewise contends that he was not injured upon Mary's death, but only suffered an injury when he was ordered to leave the Evanston property in March 2012.

¶ 43    We hold that the reasoning in *Wackrow* is instructive and section 13-214.3(d) applies to the facts of this case.  That subsection expressly applies "[w]hen the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered."  735 ILCS 5/13-214.3(d) (West 1994).  In this case, the allegedly negligent legal services were rendered to Mary and not to Charles, even if he was to be a third-party beneficiary of Molitor's legal services to Mary.  See *Wackrow*, 231 Ill. 2d at 425-26 (noting that Woods, the decedent, was the person for whom the professional services were rendered, implicating section 13-214.3(d)).

¶ 44    Our supreme court in *Wackrow* reasoned that: "Based upon the plain language of the statute, the injury caused by defendant's legal malpractice *** occurred upon the death of Woods, and not when plaintiff's claim against Woods' estate was denied." *Id.* at 426.  Likewise, in the case at hand, the death of Mary—the person for whom the professional services were rendered by Molitor—triggered the provisions of the 2001 trust drafted by Molitor that is the

subject of the legal malpractice complaint against him. Because the trust could have been modified at any point during Mary's lifetime, the injury did not occur until Mary's death, and thus section 13-214.3(d) governs the claim. See *id.* at 425 ("Because Woods could have revoked that [trust] amendment or changed the beneficiary prior to his death, the injury did not occur until Woods' death. Consequently, section 13-214.3(d) applies to plaintiff's claim.").

¶ 45    We acknowledge Charles' attempt to factually distinguish *Wackrow* on the basis that Charles, at the time of Mary's death, was already in possession of the Evanston property. Based on that fact, Charles asserts that he could not have suffered an injury from Molitor's alleged malpractice until he was ordered to give up possession of the property in March 2012.

¶ 46    Although Charles' argument initially appears to have some merit, it fails to account for the important distinction between a statute of *limitation* and a statute of *repose*. That is, although a statute of limitation may not begin to run until the plaintiff has suffered, or had knowledge of, an actual injury, a statute of repose may bar a claim regardless of whether an injury has yet occurred. Indeed, the *Koczor* legal malpractice case cited by Charles states that a "statute of repose begins running when a specific event occurs, *regardless of whether an action has accrued or whether any injury has resulted.*" (Emphasis added and internal quotation marks omitted.) *Koczor*, 407 Ill. App. 3d at 998. *Wackrow* similarly states that the intent of a statute of repose is " 'to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action.' " *Wackrow*, 231 Ill. 2d at 426 (quoting *Mega*, 111 Ill. 2d at 422).

¶ 47    In *Wackrow*, our supreme court explicitly refers to section 13-214.3(d) as a repose provision (*id.* at 427), recognizing that "a repose provision may, in a particular instance, bar an action before it is discovered." (Internal quotation marks omitted.) *Id.* Thus, while the result

may seem harsh and unfair to Charles, section 13-214.3(d) as interpreted by our supreme court serves to limit his ability under the facts of this case, to file the claim in question, to a specific time period following Mary's death. This limitation applies regardless of when Charles first suffered injury from Molitor's alleged malpractice. Although we are not without sympathy for Charles' circumstances, this court can only go where the statute and our supreme court's rulings take us. As discussed our supreme court has spoken explicitly on this issue in *Wackrow*. Charles fails to specifically address why section 13-214.3(d) should not apply, other than to say that the *Wackrow* case is not comparable because the *Wackrow* plaintiff did not have possession of the property at the time of the decedent's death. While this is a valid factual distinction, as noted, our supreme court has held that section 13-214.3(d) is a *repose* provision triggered by the *death of* the person for whom legal services were rendered.

¶ 48    Notably, we further conclude that, even if subsection (d) did not apply to the facts of this case, Charles' action would nonetheless be time-barred under the statute of repose contained in subsection (c), which prohibits the commencement of an attorney malpractice action "more than 6 years after the date on which the act or omission occurred." 735 ILCS 5/13-214.3(c) (West 1994). Charles has argued that, since Molitor could have amended the 2001 trust to include the Evanston property at any time during Mary's lifetime, subsection (c)'s six-year period of repose did not begin to run until the date of her death in December 2006, which would permit him to file a complaint until December 2012. However, our supreme court has held that "[t]he period of repose in a legal malpractice case begins to run on the last date on which the attorney *performs the work* involved in the alleged negligence." (Emphasis added.) *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 18. In this case, the last date on which Molitor performed the allegedly negligent work was the day that the 2001 trust was settled, specifically, October 22, 2001. This means that

the period of repose under subsection (c) would have expired on October 22, 2007, long before

Charles filed his malpractice complaint against Molitor in June 2012. Thus, empathy aside,

Charles' complaint was untimely.

¶ 49    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 50    Affirmed.